[No. 2373-1. Division One. May 26, 1975.]

CHARLES PANKOW, INC., *Appellant,* v. HOLMAN PROPERTIES INC., *et al, Respondents,* FEDERAL INSURANCE COMPANY, *Appellant.*

*Guttormsen, Scholfield & Stafford* and *Charles W. Mertel,* for appellants.

*Perkins, Coie, Stone, Olsen & Williams* and *William S. Weaver,* for respondents.

ANDERSEN, J.—

FACTS OF CASE

This is a construction contract dispute arising out of construction of the Evergreen Building at Renton Village, a shopping center and business complex in Renton.

The owner of the building is a joint venture comprised of

Holman Properties, Inc., and Puget Western, Inc., d/b/a Renton Village Company.

The joint venture, which also owns the Renton Village development, had the Evergreen Building built by a contractor, Charles Pankow, Inc. The surety on the contractor's performance bond was Federal Insurance Company.

The architect for the job was Allan M. Walter and Associates, Inc., and the engineer was T. Y. Lin, Kulka, Yang and Associates, a corporation. These firms, as well as the contractor, are California based corporations.

The contractor contracted to design and build a 6-story office building for the owner at a price in excess of $2 million.

Pursuant to the contract, the contractor was to provide and furnish final plans and specifications, all material, temporary utilities, equipment, supervision, labor and services for the proper construction of the building.

After the building was largely completed, problems arose as to whether certain of the work had been done according to the standards required by the construction agreement. This ultimately resulted in the contractor leaving the job site and, as the trial court was subsequently to find, the architect did not issue the certificate of completion called for by the contract.

This litigation began when the contractor sued the owner for approximately $35,000 it claimed to be owing on the contract. The owner counterclaimed asking some $50,000 for what it said was defective work. The owner by its pleadings also brought the contractor's surety, the architect and the engineer into the suit.

Prior to trial, the engineer was dismissed out by a summary judgment.

The case went to trial before the court sitting without a jury. The trial lasted 5 days. A number of witnesses, including expert witnesses, were presented by the respective parties and some hundreds of pages of documentary evidence were introduced.

The trial court thereupon entered its findings of fact and

conclusions of law. The architect was dismissed out and the owner was granted a recovery of $36,265 against the contractor and its surety. The court fixed the amount of the unpaid contract balance at $33,949.76, set that sum off against the amount awarded the owner and then entered judgment in favor of the owner for the difference, being the sum of $2,315.24.

It is from this judgment that the contractor and its surety appeal.

The owner cross-appeals from the trial court's failure to award it all of the items of damage asked by its counterclaim against the contractor and the contractor's surety.

## ISSUES

The following four issues are determinative of this appeal.

ISSUE ONE. Can an assignment of error directed to the trial court's denial of a motion in limine prevail where the brief contains no supporting citation of authority?

ISSUE TWO. Under the Renton Building Code, did the city's building department or its director have final authority to approve the use of 1/4-inch-thick glass when the code called for 5/16-inch-thick glass?

ISSUE THREE. Was the trial court's finding that the use of 1/4-inch-thick glass violated the building code improper as a collateral attack on an administrative determination?

ISSUE FOUR. Was there substantial evidence to sustain the trial court's findings of fact?

## DECISION

ISSUE ONE.

CONCLUSION. The contractor has not established that the trial court's denial of its motion in limine was erroneous.

The contractor argues that the trial court abused its discretion in denying the contractor's motion in limine which had asked that glass thickness evidence be excluded.

The contractor cites no authority in support of its assignment of error. This court will not give consideration to a claim of error which is unaccompanied by citation of

authority unless it is apparent without further research that the assignment is well taken. *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962); *Corbin v. Madison*, 12 Wn. App. 318, 322, 529 P.2d 1145 (1974).

Here the owner's counterclaim alleged that the contractor failed to do its work in conformity with, among other things, "the applicable building code." Testimony as to what the building code required as to glass thickness was offered by both the contractor and owner and was admitted without objection. The claim of error is not well taken.

ISSUE Two.

CONCLUSION. The city's building director did not have discretion to approve the use of glass in direct contravention of the requirements of the building code.

The storefront plans approved by the city building director showed that 1/4-inch-thick glass would be installed.

The contractor urges that this approval was binding on the trial court on two bases.

The contractor first suggests that the building director, as the administrator of the building code, had the discretion to authorize use of glass 1/4-inch thick rather than glass 5/16-inch thick as called for by the code.

The Renton Building Code provides otherwise:

The issuance or granting of a permit or approval of plans and specifications shall not be construed to be a permit for, or an approval of, any violation of any of the provisions of this Code.

Uniform Building Code § 302(c) (1967). *Accord, Eastlake Community Council v. Roanoke Associates, Inc.*, 82 Wn.2d 475, 482, 513 P.2d 36 (1973).

The building director had no discretion in this case to alter the requirements of the building code as to glass thickness.

ISSUE THREE.

CONCLUSION. The rule prohibiting collateral attack on administrative determinations did not bar the trial court from

considering whether or not the glass installed by the contractor complied with the building code.

The contractor's second argument as to the building director's approval being binding on the court is that it was an administrative determination which, not having been attacked in a direct proceeding, could not be collaterally attacked by the owner in this contract action.

 It is a general rule that the order or determination of an administrative body acting with jurisdiction and under authority of law is not subject to collateral attack in the absence of fraud or bad faith. *Knestis v. Unemployment Compensation & Placement Div.*, 16 Wn.2d 577, 581, 134 P.2d 76 (1943); 2 Am. Jur. 2d *Administrative Law* § 493, at 299 (1962) 73 C.J.S. *Public Administrative Bodies & Procedures* § 146, at 479 (1951).

Even assuming, however, that the building director's approval of the plans is the kind of an order or determination of an administrative body that the prohibition against collateral attack applies to, that rule would still not pertain to the present case.

An administrative determination binds those who are parties to the proceeding and over whom jurisdiction has been acquired. 2 Am. Jur. 2d *Administrative Law* § 481, at 288 (1962).

Conversely, an administrative determination does not bind one who was not a party to the proceeding. *NLRB v. Stone*, 125 F.2d 752, 757 (7th Cir. 1942); *Cochise Sanitary Servs., Inc. v. Corporation Comm'n*, 2 Ariz. App. 559, 410 P.2d 677, 679 (1966); *Kunkel v. Eastern Iowa Light & Power Cooperative*, 232 Iowa 649, 5 N.W.2d 899, 903 (1942); *Juster Bros. v. Christgau*, 214 Minn. 108, 7 N.W.2d 501, 509 (1943).

It was the contractor who obtained approval of the plans with respect to glass thickness. The owner was not a party to obtaining that approval, and in this litigation between it and the contractor, is not bound by it.

The construction contract by its terms required that the bronze plate glass installed on the storefront of the building

"meet code requirements." Whether the glass complied with the building code or not was thus an issue in the case that it was proper for the trial court to decide.

ISSUE FOUR.

CONCLUSION. There being substantial evidence to sustain the trial court's findings of fact, they will not be disturbed on this appeal.

■ The remaining issues in the case are primarily factual. As this court has stated:

> To the extent that factual questions must be determined, *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959), applies. Under *Thorndike,* we are constitutionally unable to substitute our findings for those of the trial court if those findings are supported by substantial evidence.

*Jackson v. Pennington,* 11 Wn. App. 638, 646, 525 P.2d 822 (1974).

The contractor excepts to a number of the trial court's findings of fact. Principal among these are its findings that the contractor's defective work caused $20,000 damages to the owner with respect to the glass storefront and $12,000 damages with respect to the monumental stairways.

As to the storefront, evidence which the trial court was entitled to believe included the following. Glass 5/16-inch thick was required by the building code for the sixty-three 8- by 8-foot glass panels, but glass 1/4-inch thick was used instead. Because the glass used was too thin, under certain wind conditions this glass could, and on a few occasions did, literally explode into fragments.

The manager of the firm which did the glass subcontracting work testified that the city building department at one time shut down the glass installation work because it was not being done in compliance with the building code. The manager said that he then computed it would cost in excess of $20,000 to bring the work up to code, so advised the contractor's engineer and then went with him to call on the city's building director.

Following a confrontation by the contractor's engineer,

the head of the building department approved the plan in question. The glass company manager further testified to his then receiving the final word from the contractor's engineer as to the storefront glass:

They said the money was not in the budget for this, and I was informed to—once everything had been signed off, to install it as signed off and just keep my mouth shut and stay out of it.

As to the large 15-foot-wide monumental stairways on two sides of the building, there was evidence which the court could believe that included the following. The stairs were large concrete stairs poured in place. After being put in, they gradually settled or sank into the ground. In addition, the stair risers were higher than permitted by the code. The settling occurred because of design and construction errors. Water mains under the stairs were broken by the settling. This, in turn, caused a washout and the stairs ultimately had to be replaced at a cost of in excess of $20,000.

The evidence to support the trial court's findings against the contractor was substantial. No contention is made that the proper measure of damages was not applied. The damages found were well within the range of the testimony. There was no error as to such findings.

The owner by its cross-appeal in turn argues that the uncontradicted evidence proves that the owner's cost to construct and maintain a system to keep the basement of this new building free of water was $30,488. The owner claims it was entitled under the contract to have a building with a dry basement and that the court erred in not awarding it this additional sum.

The basis of the trial court's denial of the owner's claim was the following finding:

To the extent there were any design defects in the basement they resulted from errors or omissions in the Dames & Moore Soils Report furnished by the defendants

[owner] to the plaintiff [contractor] which the architect reasonably relied upon and was entitled to rely upon.

Finding of fact No. 2.22.

Evidence to sustain this finding was presented to the trial court. It included that the owner on its own retained a soils engineering firm, obtained a report from that firm which was misleading in some respects as to ground water conditions and then furnished the report to the contractor and architect for their use. There was also evidence that the report was represented to the contractor and architect as correctly indicating the subsurface conditions at the building site.

In this regard, the court was also entitled to believe that the local office of the owner's soils engineer which prepared the report was much more familiar with the ground water conditions in the filled low area where the building was built than were the California contractor, architect and engineer.

The same rule of law applies to the trial court's finding challenged by the owner as applied to the findings challenged by the contractor. *Jackson v. Pennington, supra.* There was substantial evidence, circumstantial as well as direct, to support the trial court's finding of fact to which error was assigned by the owner. The trial court, therefore, did not err in entering that finding and in not awarding the additional damages claimed by the owner.

There being no error in connection with either the appeal by the contractor and its surety or the cross-appeal by the owner, the judgment is affirmed.

SWANSON and CALLOW, JJ., concur.