[No. 5923–1.   Division One.   January 15, 1979.]

PATRICIA FORSMAN, ET AL, *Appellants,* v. AETNA CASUALTY AND SURETY COMPANY, *Respondent.*

*Mathew D. Griffin* and *Max Nicolai,* for appellants.

*Lee, Smart, Cook, Biehl & Martin, P.S.,* and *John F. Biehl,* for respondent.

ANDERSEN, A.C.J.—

FACTS OF CASE

At issue in this case is the construction of a private insurance policy designated "Workmen's Compensation and Employers' Liability Policy—Voluntary Compensation Endorsement."

Patricia Forsman and her husband commenced this action against Aetna Casualty and Surety Company. It was their claim that Aetna, in having them sign a final receipt and release after receiving some $22,338.99 in benefits under its policy, had defrauded them and that the release was also invalid on the grounds of mutual mistake and lack of consideration.

Aetna's motion for summary judgment on the fraud and mutual mistake claims was granted. Then, following a trial to the court on the issue of whether or not consideration had been given for the release, findings and judgment were entered for Aetna. The plaintiffs appeal.

In 1969, Aetna wrote an insurance policy combining employer's liability coverage and voluntary workmen's compensation type coverage for Everett General Hospital. At that time there was no state workmen's compensation coverage for nurses' aides such as the plaintiff, Patricia Forsman.

Basically, the Aetna policy provided that in the event a hospital employee was injured, the employee had the option to sue the hospital for damages at common law, or to accept payment of benefits under the voluntary compensation endorsement of the policy comparable to benefits payable under Washington's industrial insurance act, RCW Title 51. If the injured employee elected to sue the hospital, Aetna provided liability protection for the hospital. If, on the other hand, the employee elected to receive benefits under the voluntary compensation provisions of the policy, the

employee was required, as a condition precedent to receiving benefits, to execute a document releasing the employer and insurer from claims arising out of the injury and then Aetna would pay the employee benefits according to the state workmen's compensation schedule. Once the release (in this case an agreement and covenant not to sue) was executed, the injured employee could no longer sue the employer under common–law rules of liability but was entitled to receive monthly benefit payments from the insurance carrier as a matter of right.[1]

The parties agree that the hospital, as Mrs. Forsman's employer, was not obligated by law to carry compulsory workmen's compensation as to her, and that the State of Washington does not authorize private insurance carriers such as Aetna to provide compulsory workmen's compensation insurance. The trial court's findings and conclusions explain this controversy and the trial court's resolution of it.

---

[1]Under the provisions of the agreement and covenant not to sue entered into between the plaintiffs as claimants and Aetna as the insurer on January 27, 1970, the parties mutually agreed:

1. The Insurer will pay to the Claimant an amount equal to that sum which the Claimant would receive had [there been] a valid and enforceable claim for Workmen's Compensation benefits on account of the aforesaid occurrence under the Workmen's Compensation Law of the State of Washington. It is understood and agreed that no payment will be made to the claimant for any period of disability during which his employer at the time of the aforesaid occurrence pays full wages to the claimant.

2. The Insurer will also pay or provide such further benefits as the Employer would be required to pay or provide had the Claimant a valid and enforceable claim for workmen's compensation benefits on account of the aforesaid occurrence under the Workmen's Compensation Law of the State of Washington.

3. In consideration of the foregoing undertakings of the Insured, the Claimant does hereby covenant, for herself, her heirs and assigns, never to sue the Employer or the Insurer, their successors and assigns, for damages for said injuries, and further agrees that the Employer and the Insurer may plead these presents as a bar to any such action against them or either of them, expressly reserving, however, and not hereby intending to discharge any claim or cause of action which he may have against any party other than the Employer and the Insurer by reason of the aforesaid occurrence.

Plaintiff Patricia Forsman was injured on or about December 9, 1969 while an employee of Everett General Hospital.

Finding of fact No. 1.

At the time of her injury, Patricia Forsman was not covered under the provisions of Title 51 of the Revised Code of Washington.

Finding of fact No. 2.

Defendant Aetna Casualty and Surety Company had issued a policy of insurance to Everett General Hospital which provided employer's liability or voluntary compensation insurance coverage.

Finding of fact No. 3.

Plaintiffs William W. Forsman and Patricia Forsman entered into an Agreement and Covenant Not to Sue dated January 27, 1970 with defendant Aetna, wherein plaintiffs released their common law claims against Everett General Hospital in return for payment of benefits similar to workmen's compensation benefits available under the workmen's compensation law of the State of Washington and based on the private policy of insurance issued by defendant Aetna to Everett General Hospital.

Finding of fact No. 4.

Plaintiff Patricia Forsman received temporary total disability payments and medical expense payments, and on or about December 8, 1973 received a lump sum payment of a 35% permanent partial disability. Defendant Aetna had the right to make payment of the permanent partial disability award on an installment basis.

Finding of fact No. 5.

Plaintiffs Patricia Forsman and William W. Forsman signed a Final Receipt and Release on or about December 8, 1973 in return for receipt of The Aetna draft in the amount of $4,462.50. The Final Receipt and Release discharged, among other things, all rights which plaintiffs had under the policy of insurance issued by The Aetna to Everett General Hospital.

Finding of fact No. 6.

At all times material herein, plaintiffs were represented by competent legal counsel, negotiations with The

Aetna were conducted through counsel, and the Final Receipt and Release and draft were forwarded by The Aetna to plaintiffs' counsel.

Finding of fact No. 7.

Based on the foregoing Findings of Fact, the court now makes and enters the following:

The court has jurisdiction over the parties and subject matter of this lawsuit.

Conclusion of law No. 1.

The Agreement and Covenant Not to Sue signed by the plaintiffs was the condition precedent required by the insurance policy before payment of benefits by defendant Aetna.

Conclusion of law No. 2.

There was sufficient consideration for the execution of the Final Receipt and Release by plaintiffs on December 8, 1973.

Conclusion of law No. 3.

The language of the insurance policy and the Final Receipt and Release signed by plaintiffs is not ambiguous, and plaintiffs released all future claims against defendant Aetna Casualty and Surety Company and General Hospital of Everett, whether said claims were based on the Agreement and Covenant Not to Sue, the accident or occurrence in which plaintiff sustained her injuries, or on the policy of insurance issued by defendant Aetna to the General Hospital of Everett.

Conclusion of law No. 4.

Judgment should be entered dismissing plaintiffs' Complaint with prejudice and with costs to defendant.

Conclusion of law No. 5.

The various assignments of error present one ultimate issue.

## ISSUE

Did the trial court err in not setting aside the final receipt and release signed by the plaintiffs and in not permitting them to recover additionally for a claimed aggravation of the original injury?

## DECISION

CONCLUSION. The trial court did not err and we affirm.

■ The plaintiffs declined their right to sue the employer and elected to take the benefits provided by the voluntary compensation endorsement of the Aetna policy. A voluntary compensation endorsement is a voluntary contract with the insurer and its construction is to be determined by the courts. *In re Gumm,* 118 Ind. App. 695, 83 N.E.2d 487, 488 (1949).

The pertinent provision of the voluntary compensation endorsement in the Aetna policy reads as follows:

*Coverage C—Voluntary Compensation*—To pay on behalf of the Insured, if any employee within a group of employees described in the schedule shall sustain injury, including death resulting therefrom, while employed by the Insured in operations in a state specified opposite the description of such group of employees, under circumstances which would have rendered the Insured liable for compensation if the injured employee and the Insured had been subject to the workmen's compensation law designated in the schedule with respect to such employment, *an amount equal to the compensation and other benefits which would have been payable under such law* had the injured employee and the Insured been subject to such law with respect to such employment.

(Italics ours.)

■ As explained in *Cisneros v. Insurance Co. of North America,* 254 F. Supp. 864, 866 (S.D. Tex. 1966):

The voluntary compensation policy provides coverage to employees not covered by the Workmen's Compensation Law, but makes such law applicable to the extent that it measures the amount of compensation and other benefits payable where the employee's injuries were such that he would be entitled to compensation under the Workmen's Compensation Law had he been covered by it. It is purely a matter of contract, and the Texas Workmen's Compensation Law has no governing effect as to voluntary compensation except insofar as it is made applicable by the policy.

*Accord, United States Fidelity & Guar. Co. v. Valdez,* 390 S.W.2d 485 (Tex. Civ. App. 1965).

The question of a claimant's right under a voluntary compensation policy to reopen a claim for aggravation of the original injury, where benefits have been paid to the claimant at the agreed installment rate of benefits, is not before us; therefore, we do not address it.

Here, as the trial court found, Aetna had the right to pay the permanent partial disability award in monthly payments according to the statutory workmen's compensation benefit schedule in effect at the time of the original injury. Instead, at the plaintiffs' request, Aetna paid the award in a lump sum. In exchange for that lump sum payment, the plaintiffs signed the final receipt and release which was witnessed by their attorney, and by the terms of which they released Aetna and Everett General Hospital

> from *any and all causes of action, rights, remedies, claims, suits or judgments I now have or which I or my heirs or legal representatives hereafter may have* by reason of the aforesaid agreement, or the accident or occurrence described therein, or under any policy of insurance The Aetna Casualty and Surety Company issued to my said employer.

(Italics ours.) The release further provided that Aetna's obligation to make payments "*does hereby terminate and cease for all time.*" (Italics ours.)

The trial court did not err in entering a summary judgment dismissing the fraud and mutual mistake claims. We have examined the affidavits filed in connection with the motions and agree with the trial court that there were simply no facts presented which raised any issues of fact as to the existence of fraud or mutual mistake. Aetna was therefore entitled to a judgment on those issues as a matter of law. CR 56(c); CR 56(d).

With respect to the plaintiffs' argument on appeal that no consideration was given for the final receipt and release signed by the plaintiffs and that it and the policy were ambiguous, the trial court's oral decision is instructive:

> It appears abundantly clear to me under the law of this State that detriment to the Insurance Company and

benefit to the plaintiff through the receipt of such lump sum payment constitutes a legally sufficient consideration for the execution of the final receipt and release. I have read the final receipt and release over very carefully, as well as the insurance policy itself, in an effort to ascertain if there isn't some ambiguity therein which would permit me to say that the plaintiff has not by the execution of that Release released her right to seek a later reopening of her claim as the result of further aggravation of her injury. If I could find such ambiguity, I would be only too happy to interpret such against the Insurance Company who drew the release. Unfortunately, the language of that Release is just not ambiguous.

I think it would be inappropriate for me, because of my personal feelings, to try to redraft the agreement between the parties. It is difficult for me to comprehend how the plaintiff at this late date can contend that it was not her intent to accept the $4,462.50 which she received on or about December 8, 1973, in exchange for the release of all of the rights she might have under the policy. It appears that throughout the entire period of this incident, she was represented by competent counsel to whom the final receipt and release and draft were mailed. She and her husband read and executed the Release and endorsed the draft in the offices of counsel in the presence of Mr. Russ Juckett, whose official capacity does not appear of record in this proceeding. After the execution of those documents, Mr. Griffin, on December 10, 1973, wrote a letter returning the "Release of All Claims," to defendant. This is on the letterhead of Mathew Griffin's law firm. Mr. Russ Juckett appears thereon as an associate of that firm.

It is not encumbent upon me to determine in this proceeding the adequacy of the consideration received by Mrs. Forsman but only the legal sufficiency of such, and I do find that there was a legally sufficient consideration accepted by her in return for which she did release the defendant from the claims herein asserted.

■ We agree that there is no ambiguity in the agreements signed by the plaintiffs or in the voluntary compensation endorsement; therefore, the court was not at liberty to revise them on the theory it was construing them. *Jeffries v. General Cas. Co. of America,* 46 Wn.2d 543, 546,

402

283 P.2d 128 (1955); *State Farm Mut. Auto. Ins. Co. v. Phillips*, 2 Wn. App. 169, 176, 467 P.2d 189, 46 A.L.R.3d 1013 (1970).

■ Neither did the trial court err when it decided that Aetna's lump sum payment of benefits to the plaintiffs before the moneys were due was legally sufficient consideration for the release of all plaintiffs' claims, past and future, which the plaintiffs signed. *Mathews v. Pacific Mut. Life Ins. Co.*, 47 Cal. App. 2d 424, 118 P.2d 10 (1941); *Tindall v. Northern Pac. Ry.*, 58 Wash. 118, 107 P. 1045 (1910); *Welsh v. Barnes–Duluth Shipbuilding Co.*, 221 Minn. 37, 21 N.W.2d 43, 47 (1945). The plaintiffs voluntarily and knowingly signed a clear and unambiguous agreement supported by a lawful consideration. The trial court did not err in concluding as it did. *National Bank v. Equity Investors*, 81 Wn.2d 886, 912, 506 P.2d 20 (1973); *Daniel v. Pacific Northwest Bell Tel. Co.*, 20 Wn. App. 444, 580 P.2d 652 (1978).

Appellate counsel for the plaintiffs urges that we read into the voluntary compensation endorsement of the Aetna policy various provisions of this state's industrial insurance act, RCW Title 51. Particular emphasis is placed on the nonwaiver provisions of the workmen's compensation law, RCW 51.04.060,[2] and on the basis of that statute, it is argued that the final receipt and release is void.

It must first be emphasized that this is not a case brought under the state workmen's compensation law. Unlike the workmen's compensation acts in some states, the Washington industrial insurance program sets up a state fund and is administered by a state agency, the Department of Labor and Industries. Only extra–hazardous work is covered thereby but by definition, or election, most employment within the state comes within the act. 1 V.

[2]RCW 51.04.060 reads as follows:

"No evasion of benefits or burdens. No employer or workman shall exempt himself from the burden or waive the benefits of this title by any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void.

Towne, Wash. Prac. § 1621 (2d ed. 1976). The intent and purpose of the act is to provide compensation for all injuries and accidents arising from extra–hazardous employment and to abolish the common–law remedies.

Aetna's voluntary compensation endorsement does not incorporate the state workmen's compensation statutes in it. The policy only makes the workmen's compensation law applicable to the extent that it measures the amount of compensation and other benefits payable, and the employee is entitled to compensation when his or her injuries are such that the workman would be entitled to compensation under the workmen's compensation law had the workman been covered by it. *Cisneros v. Insurance Co. of North America, supra; United States Fidelity & Guar. Co. v. Valdez, supra.*

In the final analysis, any argument that all of the provisions of this state's workmen's compensation law should be read into the private voluntary compensation endorsement of an insurance policy is an argument that someone covered by such an endorsement has more rights than a person covered by state workmen's compensation. If that argument was accepted, a person covered by a voluntary compensation policy would have all of the rights of state workmen's compensation plus the option to sue the employer. Such a person would also have the right to resort to the courts in order to determine compensation rather than having it determined initially at an administrative level and then before a board on which representatives of labor, management and the public sit. Nothing in the law or in the insurance policy before us authorizes such a construction.

Despite the title of the Aetna policy, "*Workmen's Compensation* and Employers' Liability Policy—Voluntary Compensation Endorsement," (italics ours) the rights of an injured employee under it are not as fully protected as the rights of an injured workman are under the State of Washington workmen's compensation law.

404

■ The plaintiffs' assignments of error directed to the trial court's findings of fact are not well taken. Those findings which are properly findings of fact and not conclusions of law are supported by substantial evidence in the record and, therefore, stand as verities on appeal. *Stringfellow v. Stringfellow*, 56 Wn.2d 957, 959, 350 P.2d 1003, 353 P.2d 671 (1960); *Charles Pankow, Inc. v. Holman Properties, Inc.*, 13 Wn. App. 537, 542, 536 P.2d 28 (1975).

Affirmed.

SWANSON and RINGOLD, JJ., concur.