711 So.2d 364 (1998)
Neil CRESSIONNIE
v.
LIBERTY MUTUAL INSURANCE COMPANY, et al.
No. 98-C-0534.
Court of Appeal of Louisiana, Fourth Circuit.
April 8, 1998.
*365 Edward J. Cloos, III, Covington, for Plaintiff/Relator.
Kevin Phayer, Metairie, for Defendant/Relator.
Before KLEES, BYRNES and PLOTKIN, JJ.
PLOTKIN, Judge.
This joint application for supervisory writs was filed by both plaintiff, Neil Cressionnie, and defendant, Liberty Mutual Insurance Company, after the trial court denied cross-motions for summary judgment[1] on an insurance coverage issue. In filing their joint application for supervisory writs in this court, the parties point out that the only remaining issue in the case is a legal issue, which should be decided on a motion for summary judgment. We grant the application for supervisory writs.

Facts
Mr. Cressionnie filed this suit against Liberty Mutual, seeking benefits for his mental disability under the "Voluntary Compensation Endorsement" of a Workers' Compensation/ Employer's Liability Insurance policy issued by Liberty Mutual to Fisk Electric Company, Mr. Cressionnie's employer. Meanwhile, in a separate workers' compensation claim filed by Mr. Cressionnie against Fisk Electric based on the same alleged injury, the Louisiana Fifth Circuit Court of *366 Appeal held that Mr. Cressionnie was not entitled to workers' compensation benefits because he failed to establish that his panic disorder resulted from "sudden, unexpected, and extraordinary stress related to his employment," as required by La. R.S. 23:1021(7)(b) to support recovery of compensation for mental injury caused by mental stress. Cressionnie v. Fisk Electric, 93-931 (La.App. 5th Cir. 2/14/96), 671 So.2d 3. Specifically, the court stated, in pertinent part, as follows:
While plaintiff showed that his mental injury was the result of his employment and that he is disabled from that injury, he failed to show that it is a compensable injury.
Id. at 7, 671 So.2d at 6 (emphasis in original).
In filing the motion for summary judgment claiming entitlement to benefits under the Voluntary Compensation Endorsement of the Liberty Mutual policy, Mr. Cressionnie relies heavily on the Fifth Circuit's determination that his injury, though both disabling and employment-related, is not compensable under Louisiana's workers' compensation law. Since his injury is not compensable, Mr. Cressionnie argues, he qualifies as a covered person under the endorsement.
Liberty Mutual denies coverage, claiming that Mr. Cressionnie is not a covered person under the Voluntary Compensation Endorsement. Liberty Mutual bases its argument on the language of the contract, which it claims provides coverage only to employees not covered under Louisiana's workers' compensation law.

Standard for reviewing motion for summary judgment
Appellate courts must review summary judgment de novo, asking the same questions as do trial courts: whether any genuine issues of material fact exist, and whether the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). In determining whether an issue is "genuine," courts cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. Daniel v. Blaine Kern Artists, Inc., 96-1348 (La.App. 4 Cir. 9/11/96) 681 So.2d 19, writ denied, 96-2463 (La.12/6/96), 684 So.2d 934.
Procedurally, under the 1997 amendments to the summary judgment law, La. C.C.P. art. 966, a court's first task on a motion for summary judgment remains the sameto determine whether the moving party's supporting documentspleadings, depositions, answers to interrogatories, admissions and affidavitsare sufficient to resolve all material factual issues. La. C.C.P. art. 966(B). If the court finds that a genuine issue of material fact exists, summary judgment must be denied. Walker v. Kroop, 96-0618 (La.App. 4 Cir. 7/24/96), 678 So.2d 580, 584.
However, if the court finds, based on the evidence presented by the movant, that no genuine issues of material fact exist, the party opposing the motion for summary judgment is required to "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." La. C.C.P. art. 966(C)(2). In meeting his burden of proof, the movant is expressly not required "to negate all the essential elements of the adverse party's claim, action, or defense," but only "to point out to the court that there is an absence of factual support for one or more elements." Id. Once the movant has met his burden and the burden shifts to the party opposing the motion, the non-moving party is not allowed to rely on the allegations of his pleadings in opposition to a properly-supported4 motion for summary judgment. Oakley v. Thebault, 96-0937 (La.App. 4 Cir. 11/18/96), 684 So.2d 488.
In the instant case, the parties agree that no genuine issues of material fact remain to be decided. Thus, the only question is whether one of the parties proved that he is entitled to judgment as a matter of law.

Coverage under the Voluntary Compensation Endorsement
The issue in the instant case is whether Mr. Cressionnie is a covered person under the Voluntary Compensation Endorsement of the Liberty Mutual policy. Both parties maintain that summary judgment on the matter of insurance coverage is appropriate to this case, especially since the facts of the *367 employment and injury have already been litigated to a final conclusion.
The Voluntary Compensation Endorsement at issue herein provides recovery for damages sustained as a result of bodily injury by accident or disease related to the covered employment. It is prefaced by the statement: "This endorsement adds Voluntary Compensation insurance to the policy." Paragraph B of the endorsement provides:
We will pay an amount equal to the benefits that would be required of you if you and your employees described in item 1 of the Schedule were subject to the workers compensation law shown in item 1 of the Schedule. We will pay those amounts to the persons who would be entitled to them under the law. (Emphasis added.)
Paragraph F, entitled "Employers Liability Insurance," contains a schedule which indicates that the endorsement apples to all employees except domestic workers, in all states except New Jersey, Texas and Wisconsin, and designates the law of the state where the employee was hired as the applicable workers' compensation law.
Mr. Cressionnie argues that the purpose of the Voluntary Compensation Endorsement is to provide coverage to an employee with an employment-related injury which is not covered under Louisiana's workers' compensation law. In the Fifth Circuit's workers' compensation opinion in this case, the court found both that the injury was employment-related and that the injury was not covered by the workers' compensation statute.
Liberty Mutual argues that Mr. Cressionnie is not covered under the plain language of the policy. Under Liberty Mutual's interpretation, the endorsement provides coverage only if two conditions are met: (1) the workers' compensation law does not apply to the injured worker, and (2) the injury would have been covered by Louisiana's workers' compensation law, if the worker had been covered to that law. Liberty Mutual claims that the endorsement is intended to provide workers' compensation benefits to those employees not covered by a state's workers' compensation statutes. Because Mr. Cressionnie is covered by Louisiana's workers' compensation law, Liberty Mutual argues, he is not covered under the endorsement. Liberty Mutual argues that Mr. Cressionnie's interpretation of the Voluntary Compensation Endorsement makes sense only if Paragraph B is completely disregarded.
Mr. Cressionnie notes that the "sticking point" making interpretation of the endorsement difficult is the use of the phrase "subject to." Mr. Cressionnie challenges Liberty Mutual's first argumenti.e, that the endorsement applies only to certain employees statutorily outside of the workers' compensation scheme. Mr. Cressionnie claims that Liberty Mutual's interpretation renders the endorsement meaningless under the facts of the instant case, stating in brief as follows:
Workers' compensation laws, with only narrow limited statutory exceptions, are intended to cover all persons working within the territorial jurisdiction of the state. Thus, if "subject to" means what the insurance company says it means, the only people who could ever be covered under this policy in Louisiana are people such as Sheriff's deputies and domestic servants who are statutorily placed out of the workers' compensation scheme. Fisk Electric Company is an industrial electrical contractor who would not ever employ Sheriff's deputies or domestic workers. Liberty Mutual Insurance Company offers no coherent explanation for why there would be a bargained for insurance policy coverage provision that does not cover anyone at any time.
Mr. Cressionnie notes that, where an insurance clause is ambiguous, it must be construed in favor of coverage.
Liberty Mutual notes that the fact that an insurance policy is a complex legal instrument requiring analysis does not automatically render the policy ambiguous. See LIGA v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759. Liberty Mutual also attempts to answer Mr. Cressionnie's claim that the provision "does not cover anyone at any time" by claiming that the endorsement was purchased out of an "abundance of caution" to cover any eventuality whereby, due to different state laws, an employee may not be covered by that state's *368 compensation act. Moreover, Liberty Mutual claims that an employer pays no premium in advance for such coverage, but rather is charged a premium retroactively if the insurer covers damages pursuant to the coverage.
The issue presented by this application for supervisory writs is res nova in the State of Louisiana, perhaps in the United States. This court was unable to locate any cases considering the exact issue raised here in any state or federal court in the United States. Moreover, the parties do not cite any cases dealing with the issue presented here. However, a number of cases concerning the interpretation of "Voluntary Compensation Endorsement" were located; those cases are instructive.
First, a close reading of the various cases reveals that workers' compensation laws vary greatly from one state to another. For example, workers' compensation is purely optional in some states, like Oregon, where employers are allowed to simply "opt out" of coverage. See Zurich Insurance Co. v. Sigourney, 278 F.2d 826 (9th Cir.1960); O'Brien v. Maryland Casualty Co., 248 Or. 400, 434 P.2d 469 (1967). In states where employers are allowed to simply opt out of compensation coverage, Voluntary Compensation Endorsements are very common in Employer's Liability Insurance Policies. Moreover, some states have statutes allowing employers to elect to obtain voluntary compensation insurance coverage for employees exempt from the workers' compensation law. See "Voluntary Coverage of Exempt Employees," 75 Tex. Jur.3d Work Injury Comp. § 115(1991).
As noted, all the cases dealing with Voluntary Compensation Endorsements focus on a different issue than the issue presented by the instant case. A common problem is whether an employee has lost his right to seek coverage under a Voluntary Compensation Endorsement, if the employee has previously filed a common law tort action against his employer or the employer's insurance company. See St. Paul Fire & Marine Insurance Co. v. Campbell County School District No. 1, 612 F.Supp. 285 (D.Wyo.1985); Forsman v. Aetna Casualty & Surety Co., 22 Wash.App. 394, 590 P.2d 353 (1979); Travelers Insurance Co. v. Brown, 396 S.W.2d 425 (Ct.Civ.App.Tex.1965), aff'd, 402 S.W.2d 500 (Tex.1966); Columbia Casualty Co. v. T.E. Mahaney, 229 F.2d 848 (5th Cir.1956).
Despite the fact that no reported cases were discovered dealing with the issue presented by this writ application, the cases discovered were sufficient to determine that Liberty Mutual correctly argues that Voluntary Compensation Endorsements apply only to workers who are not covered by a state's workers' compensation laws. See, e.g., Cisneros v. Insurance Co., 254 F.Supp. 864 (S.D.Tex.1966) ("The voluntary compensation policy provides coverage to employees not covered by the Workmen's Compensation Law"); Lopez v. Texas Employers Insurance Asso., 441 S.W.2d 318 (Tex.Civ. App. San Antonio 1969), citing United State Fidelity & Guaranty Co. v. Valdez, 390 S.W.2d 485 (Ct.Civ.App.Tex.1945) ("the employee would be entitled to compensation only if his injuries were such that he would be entitled to compensation under the workmen's compensation law had he been covered by it"); Mahaney, 229 F.2d 848 ("if any person suffers what would have been a compensable injury under the Texas compensation law, had the injured person been an employee as defined in said act and engaged in employment included therein, the company will pay such person").
In all of the cases discovered, the workers allowed to pursue recovery under a Voluntary Compensation Endorsement were not subject to the workers' compensation law of the state where they were employed. No cases were discovered where a worker who was subject to the workers' compensation laws was allowed to pursue recovery under a Voluntary Compensation Endorsement for damages caused by an injury which was not compensable under those laws.
Many of the cases discovered did not quote the language of the policy on which the decision was based. Of those that do quote the policy language, none involved the exact language at issue here. Nevertheless, we find that the language of the endorsement in question here is consistent with the results reached in the other cases. The endorsement does not apply to employers and employees *369 who are "subject to the workers compensation law" of the State of Louisiana. Mr. Cressionnie was unquestionably subject to Louisiana's workers' compensation statutes.
Essentially, the policy in question divides employees into two groups: (1) those employees covered by workers' compensation laws, who can recover under Part One of the policy, "Workers Compensation Insurance," and (2) those employees not covered by workers' compensation laws, who can recover under the Voluntary Compensation Endorsement. The policy does not, as Mr. Cressionnie suggests, divide injuries sustained by employees into two groups: (1) those injuries which are compensable under the workers' compensation law, and (2) those injuries which are not compensable under the workers' compensation law. Accordingly, he is not a covered person under the Voluntary Compensation Endorsement of the Liberty Mutual policy issued in favor of Fisk Electric.[2]
Moreover, we find no merit to Mr. Cressionnie's argument that, under the above interpretation, the endorsement "does not cover anyone at any time." Mr. Cressionnie is incorrect concerning his statement of Louisiana law relative to the workers exempted for the workers' compensation statutory scheme. Mr. Cressionnie implies that the only types of workers exempted from workers' compensation coverage under Louisiana law are domestic servants and sheriff's deputies. However, Mr. Cressionnie neglects to note the exemptions established by LSA-R.S. 23:1035(A), 23:1037, 23:1045, 23:1046, and 23:1047. Of special importance, perhaps, to the instant case is LSA-R.S. 23:1035(A), which expressly exempts the following persons from coverage:
the bona fide president, vice president, secretary, and treasurer of a corporation who owns not less than ten percent of the stock therein, or a partner with respect to a partnership employing him, or a sole proprietor with respect to such sole proprietorship may by written agreement elect not to be covered by the provisions of this Chapter.
Although it is impossible to determine from the record before us whether Fisk Electric has any employees which fall under the categories established by the above provision, the provision does show that almost any business may have use for a Voluntary Compensation Endorsement to cover injuries sustained by employees who elect not to be covered by Louisiana's workers' compensation scheme. The existence of the above article undermines Mr. Cressionnie's argument that the Voluntary Compensation Endorsement in the policy at issue in this case "does not cover anyone at any time."

Conclusion
Because Mr. Cressionnie was not a covered person under the Voluntary Compensation Endorsement of the Liberty Mutual policy issued to Fisk Electric, Liberty Mutual is entitled to judgment as a matter of law. Accordingly, the trial court judgment denying the motion for summary judgment in favor of Liberty Mutual is reversed; summary judgment is hereby entered in favor of Liberty Mutual, dismissing Mr. Cressionnie's action. The trial court judgment denying the motion for summary judgment in favor of Mr. Cressionnie is affirmed.
WRIT GRANTED; TRIAL COURT JUDGMENT DENYING MOTION FOR SUMMARY JUDGMENT IN FAVOR OF DEFENDANT REVERSED; TRIAL COURT JUDGMENT DENYING MOTION FOR SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF AFFIRMED.
KLEES, J., concurs.
BYRNES, J., concurs with reasons.
BYRNES, Judge, concurring with reasons.
I agree entirely with the result reached by the majority. However, I would adopt a *370 slightly different approach to summary judgment analysis under the 1997 amendments to LSA-C.C.P. 966. I believe that the first task of the court is no longer "to determine whether the moving party's supporting documents pleadings, depositions, answers to interrogatories, admissions and affidavits are sufficient to resolve all material factual issues." That need only be done if the court first determines that the burden of proof at trial will be on the movant. Under the 1997 amendments to LSA-C.C.P. art. 966 the first task of the court is to determine who will "bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment."
If the burden will not be on the movant, the movant need only show that there "is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." LSA-C.C.P. art. 966 C(2). This is all that is now required to shift the burden to the party opposing summary judgment.
Thus, under the new law, where the burden of proof at trial on the matter that is the subject of the motion for summary judgment is on the party opposing the motion, the moving party need only find lack of factual support for one essential element in the adverse party's position in order to shift the burden of proof. This is not as heavy a burden as requiring the moving party to affirmatively disprove an essential element of the non-moving party's position. The non-moving party is then required to "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial ..." LSA-C.C.P. art. 966 C(2). Because all doubts had to be resolved in favor of the party opposing summary judgment under the pre-1997 summary judgment law, it would have been sufficient for the non-moving party to merely raise a doubt about the "essential element" of the case. Under the new law, merely raising a doubt will not satisfy the requirement of producing "factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial."
However, that portion of LSA-C.C.P. art. 966 C(2) requiring the party opposing the motion to "produce factual support" is referring to the one essential element in dispute only. LSA-C.C.P. art. 966 C(2) does not mean that because the moving party has been able to cast doubt on one issue that the burden shifts to the non-moving party on all issues.
One way for the non-moving party to meet the requirement of the shifted burden, would be to present affidavits, deposition testimony, or documents sufficient to demonstrate the existence of prima facie proof of the "essential element." LSA-C.C.P. art. 966 C(2) does not imply that the non-moving party is required to conduct a mini-trial on the merits of the "essential element" with live witness testimony. The 1997 amendments to the summary judgment law were not intended to change the form in which evidence is presented in summary judgment proceedings.
All of the foregoing applies only to situations in which the burden of proof at trial of the matter that is the subject of the summary judgment motion is on the party opposing the motion. When the burden at trial will be on the moving party, the burden remains on the moving party to first show that there is no genuine issue of material fact as indicated by the majority opinion. In other words, LSA-C.C.P. art. 966 C(2) represents a change in the law only if the moving party will not bear the burden of proof at the trial on the merits of the matter that is the subject of the motion for summary judgment. Therefore, this change in the summary judgment law can be expected to come into play most often when the defendant is the moving party, because the plaintiff normally has the burden of proof at trial. However, this may not always be the case, for example, where the "essential element" in dispute is one involving an affirmative defense.
NOTES
[1] The cross-motions for summary judgment were actually filed two different times. The first time the motions were filed, Orleans Parish Civil District Court Judge Yada McGee denied those motions, under Louisiana's pre-1997 summary judgment law. However, after the adoption the 1997 amendments to La. C.C.P. art. 966, which made it easier for Louisiana litigants to obtain summary judgments, the parties reurged their cross motions before Judge Roland Belsome, to whom the case had been transferred because of unusual delays caused by the unrelated breast implant class action in Judge Magee's court. Judge Belsome's denial of the cross motions forms the basis of the instant joint application for supervisory writs.
[2] Nothing in this opinion should be interpreted to indicate that an employee never has a tort cause of action to recover against his employer to recover employment-related damages which are not covered by workers' compensation. That issue is neither raised by the parties nor addressed by the court in this case. The only question before this court is whether the plaintiff's injuries are covered under the applicable insurance policy.