**RURAL DEVELOPMENT, INC., et al., Appellants,**

v.

**L.T. STONE, Appellee.**

**No. 13–85–004–CV.**

Court of Appeals of Texas, Corpus Christi.

Oct. 31, 1985.

Rehearing Denied Nov. 27, 1985.

Gail Gottardo Fagan, Thomas P. Grant, Jr., Hodges and Grant, Missouri City, for appellants.

Tom Edwards, Houston, for appellee.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

BENAVIDES, Justice.

This cause reaches our Court as a suit for tortious interference with a contractual relationship. The jury found that appellant Durham interfered with the contractual rights of appellee and that Durham's acts were outside the scope of his authority as an officer of the corporate defendant Rural Development, Inc. We reverse the judgment entered on the jury's verdict and render judgment that appellee take nothing from Durham individually.

On behalf of himself as an individual, and as vice-president of Rural Development Incorporated, Stephen Wright entered into the following agreement with Stone:

## AGREEMENT

STATE OF TEXAS

COUNTY OF HARRIS

KNOW ALL MEN BY THESE PRESENTS:

THIS AGREEMENT entered into this 29th day of November, 1979, by and between RURAL DEVELOPMENT, INC., a Texas corporation, hereinafter referred to as First Party, STEPHEN WRIGHT, hereinafter referred to as Second Party, and L.T. STONE, hereinafter referred to as Third Party.

WHEREAS, the parties set out above are desirous of doing business together; and

WHEREAS, because of such desire, the parties feel the necessity of having an agreement drawn among them setting out the stipulations under which said business is to be conducted;

NOW, THEREFORE, said parties here now agree to the following particulars and stipulations:

1) All parties to this Agreement hereby agree to conduct research, development and market studies in the State of Texas for the purpose of locating, analyzing and determining the feasibility of potential sites for the development of real property.

2) First Party agrees to incur all expenses related to such research, development and market studies.

3) All parties to this Agreement do hereby agree and covenant that no commercial exploitation of its research, development and market studies will be undertaken which are not included in this Agreement.

4) This Agreement is subject only to the contingencies provided herein, and all rights not specifically granted shall be retained by all parties.

5) First Party agrees to perform research, development and market studies as an independent consultant contractor as directed by Second Party and Third Party and to incur only those expenses as mutually agreed upon between Second Party and Third Party.

6) As compensation therefor, First Party agrees to pay in equal amounts to Second Party and Third Party all net revenues derived from research, development and market studies, net revenues being defined as all proceeds derived from any commercial exploitation of research, development and market studies less those expenses of First Party as mutually agreed to by Second Party and Third Party.

7) It is further agreed by First Party and Second Party that any equity or

ownership of any real property resulting from commercial exploitation of its research, development and market studies shall be divided solely and equally by only Second Party and Third Party.

8) First Party agrees to keep accurate books and records of all receipts and disbursements, and further agrees to provide Second Party and Third Party with a monthly operating statement on the 10th of each calendar month.

It is further agreed among the parties hereto that although this Agreement does not specifically confine all real estate activities of the parties to this Agreement, the essence of this Agreement is to restrict all new development of real property by the parties and/or fees derived from research, development and market studies to the contingencies agreed to herein.

This Agreement may be cancelled in writing and at will by any party hereto by certified mail to all parties to this Agreement. In such event, this Agreement will become null and void and First Party agrees to distribute all funds and real property to Second Party and Third Party in accordance with the distribution previously agreed to herein.

SIGNED AND AGREED TO this 29th day of November, 1979, as evidenced below.

RURAL DEVELOPMENT, INC.
1200 Milam, Suite 3400
Houston, Texas 77002
By: s/ Stephen L. Wright VP
s/ Stephen L. Wright
s/ L.T. Stone

When Durham, appellant herein, was informed of the agreement by Stone, he became outraged.[1] Subsequently, Durham

sent the following notice of cancellation on Rural Development, Inc. stationery:

Dear Mr. Stone:

Please be advised that Rural Development, Inc. does hereby cancel the purported agreement signed on November 29, 1979, by Stephen L. Wright individually, L.T. Stone individually and Stephen L. Wright for Rural Development, Inc.

Very truly yours,
RURAL DEVELOPMENT, INC.
BY s/ Dwayne Durham
President

In the interim between execution and cancellation of the agreement, Rural Development, Inc. took title to a piece of property and commenced construction of six duplexes.

Stone had his attorney file *lis pendens* notices which caused a problem in converting the construction loan into a permanent loan. In that litigation, an order was granted lifting the *lis pendens*, but that order was conditioned on Rural Development, Inc. or Durham posting a $30,000.00 bond. The bond was never posted and the construction lender eventually foreclosed on the property.

Stone filed suit against Rural Development, Inc., Durham, and Wright. At trial, Stone took a non-suit against Wright; on appeal Stone waives that portion of the judgment granting recovery against the corporation on a quantum meruit theory.

A jury answered special issues nos. 6 and 7 in favor of Stone. The issues inquired:

### SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that the Defendant, Dwayne

---

1. Upon a careful reading of the contract, it would not seem unnatural for the corporation president to be upset upon learning of the terms of said contract. The corporation is to incur all expenses related to the purpose of the agreement, it can incur only those expenses approved by Stone and Wright individually, and the net over these expenses is to be shared individually by Stone and Wright; further, if the contract is terminated, Stone and Wright alone share in the accrued funds and real property. Durham was 50% owner of the corporation and President and did not know that Wright was negotiating the contract with Stone nor the particulars of the contract until Wright negotiated the contract for the corporation and for himself (Wright) individually.

Durham, intentionally interfered with the performance of the contract in question?

Answer "We do" or "We do not".

Answer: <u>We do</u>

If you have answered Special Issue No. 6 "We do", and only in the event, answer the following Issue.

### SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that any acts of R. Dwayne Durham that interfered with the contractual rights of Plaintiff, L.T. Stone, were done outside the scope of his authority or capacity as an officer and director of the corporate defendant Rural Development, Inc.?

Answer "We do" or "We do not".

Answer: <u>We do</u>

In his first two points of error, appellant alleges error in that there is no evidence or insufficient evidence to support the jury's affirmative answer to these special issues and the accompanying inquiries concerning causation and damages.

We have carefully examined the record and conclude that there is no evidence to show that Durham acted outside the scope of his authority as an officer[2] of Rural Development, Inc. The evidence established that Durham was President of Rural Development, Inc., and appellee presented no evidence that Durham's actions were outside his scope and authority as President of Rural Development, Inc.

■ TEX.BUS.CORP.ACT. art. 2.31 (Vernon 1983) states: "The business and affairs of a corporation shall be managed by a board of directors." The instant record is devoid of any evidence concerning Rural Development, Inc.'s board of directors. Furthermore, TEX.BUS. CORP.ACT art. 2.42 B. (Vernon 1983) provides:

B. All officers and agents of the corporation, as between themselves and the corporation, shall have such authority and perform such duties in the management of the corporation as may be provided in the bylaws, or as may be determined by resolution of the board of directors not inconsistent with the bylaws.

In this trial, there was neither evidence of the contents of any bylaws nor was there any evidence bylaws even existed. The record is also silent as to any resolutions by the board of directors. None were introduced. A mere showing that Durham was president of the corporation and terminated the contract as president is no evidence that appellant acted outside the course of his authority. We hold there is no evidence of appellant Durham's individual interference and sustain appellant's no evidence point.

At trial, appellee objected to the submission of special issue no. seven on the grounds that the issue was not necessary to support recovery on the theory of tortious interference with a contract. On appeal, this argument is repeated. We therefore look to special issue no. six to see whether the issue, standing alone, will support the judgment.

To establish the necessary elements for his claim of tortious interference, appellee had to show:

(1) that Durham maliciously interfered with the contractual relationship, and

---

**2.** In his brief, appellee argues: (1) there is no "guarantee" (sic) in the evidence that Durham was even the president of Rural Development, Inc.; (2) that the letter of cancellation was never admitted into evidence; and (3) that appellee made no judicial admission that Durham was president of Rural Development, Inc.

Only the second assertion is correct. While we know of no requirement of an evidentiary "guarantee," there is ample evidence in the record to show that Durham was president of Rural Development, Inc., and appellee so testified. Although the letter giving notice of cancellation was not admitted as evidence, appellee plead that it was received and attached a copy of the letter to his petition as Exhibit II. Appellee also pled that the letter was sent on behalf of Rural Development, Inc. by and through its president, Dwayne Durham. "Any fact admitted is conclusively established in the case without the introduction of the pleadings or presentation of other evidence." *Cameron County v. Velasquez,* 668 S.W.2d 776, 783 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.) (quoting *Houston First American Savings v. Musick,* 650 S.W.2d 764, 767, 769 (Tex.1983).

(2) without legal justification or excuse. *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 107 (Tex.1984). Or as expressed by this Court:

> "[T]o establish a cause of action for interference with business opportunity, [Stone] was required to show a willful and intentional interference with [his] business relations, without cause or excuse, which caused [him] injury."

*Vaquero Petroleum Co. v. Simmons*, 636 S.W.2d 762, 768 (Tex.App.—Corpus Christi 1982, no writ).

■ In light of *Sakowitz v. Steck*, and our own opinion in *Vaquero Petroleum*, we hold that it was incumbent upon appellee to show that Durham acted without legal justification or excuse in order to establish his cause of action. It is not enough to simply show interference; there must be some proof the interference was tortious. As stated in *Terry v. Zachry*, 272 S.W.2d 157 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.):

> "An action will not lie, however, under the statement of the rule, for every interference. An important element to the assertion of such a right is that the thing done must be done without right or justification."

*Id.* at 159.

■ In response to special issue no. 10 the jury found that Durham's interference was the result of malice, ill will, spite, or evil motive. However, the jury was never instructed concerning the meaning of malice in the context of a cause of action for tortious interference with contractual relations.

In such a case, malice is a term of art with a special meaning. Malice is defined as an act without excuse or just cause. *Sakowitz*, 669 S.W.2d at 107 (citing *Morris v. Jordan Financial Corp.*, 564 S.W.2d 180, 184 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.)).

We do not believe that use of the word "malice," standing alone, and without definition or further instruction, is sufficient to establish an act without excuse or just cause. This is especially true when malice was grouped with words such as ill will, spite, and evil motive.[3] The focus of the special issue was on the hard feelings Durham had toward Stone and not whether Durham was justified in taking the action he did.

■ Although there was no issue submitted to determine whether Durham acted without legal justification or excuse, a finding on this issue must be deemed as found by the court in such a manner as to support the judgment if there is evidence to support such a finding, TEX.R.CIV.P. 279, for this issue was omitted without request or objection and no written findings appear in the record.

■ We have reviewed the record and conclude that there is no evidence to support a deemed finding that Durham acted maliciously, i.e. without justification or excuse. At best there was a showing of an extreme displeasure by appellant directed at Stone and evidence that Durham threatened to transfer title of the duplex project beyond the reach of Stone. We conclude that such evidence is not evidence that Durham acted without justification.

Absent a finding by the jury that Durham's act of cancelling the contract was wrongful, or absent some evidence to support a deemed finding Durham's act was tortious, the judgment must be reversed. The judgment must conform to the nature of the case proved and the verdict, TEX.R. CIV.P. 301, yet in this record, there is no evidence that Durham *tortiously* interfered with Stone's contract. Stone simply failed to establish a prima facie case. Any inference to the contrary would be grossly insufficient to support such a finding.[4]

---

**3.** The jury was instructed that they would be given a proper legal definition of any word that varied from the meaning commonly understood; however, malice was not defined.

**4.** On the contrary, a review of the evidence indicating that the benefits accrued solely to Stone and Wright individually seems to indicate a justification for the cancellation of the contract by the corporation. Nonetheless the ques-

Since there is no evidence to show appellant Durham's individual interference with the contract and for the further reason that appellee failed to present any evidence on an essential element of his alleged cause of action, we sustain appellant's first and second points of error and reverse the judgment of the trial court.

In his brief, appellee strongly argues justification is an affirmative defense that appellant had to prove by a preponderance of the evidence. Appellee also argues the defense was waived because (1) it was not plead, and (2) no issue was submitted on justification.

However, the Texas Supreme Court held that there are "two necessary elements," *Sakowitz* at 108, and are set out in that opinion as they are here. *Id.* at 107. Appellee's arguments are rejected, for appellee was required to plead and prove the elements of his cause of action and he failed to prove the "without just cause" or "wrongful act" element of his tortious interference theory.

 In their third point of error appellants allege the court erred in rendering judgment against Durham individually because appellee failed to plead, prove, or request special issues invoking the alter ego theory of recovery.

Appellants' "alter ego" point of error is inapplicable. The thrust of a cause of action for intentional interference with a contract is that a third person or entity, and not one of the parties to the contract, interferes without cause with the contract causing a loss of benefits or damages to one of the contracting parties because of such interference with a thwarting of the contract. When one of the parties to the contract interferes without cause or violates a condition of the contract the action is one for breach of specific performance. Appellant misses the mark because if appellee had to prove that Durham and Rural Development, Inc. were one and the same, or that the corporation was a sham and the alter

tion is Durham's alleged interference without cause for which proposition there is no evi-

ego of Durham individually, then the action would be for fraud or for breach of contract because the action would be against one of the parties to the contract and not a third party interfering with the contract or contracting parties. Appellants' third point of error is overruled.

In their fourth and fifth points of error appellants complain there was no evidence or insufficient evidence to support the award of damages. In their sixth point of error appellants allege the amount awarded by the jury was grossly excessive. Because of our disposition of points one and two, these points will not be addressed.

The error complained of in appellants' seventh point of error dealing with the quantum meruit recovery against the corporation need not be reviewed because appellee has waived the damages awarded against the corporation.

 In their eighth point of error appellants complain that testimony concerning statements made at settlement negotiations was admitted over their objection.

Appellee replies that (1) the evidence was admitted for the limited purpose of showing malice; (2) that there were no proper objections; and (3) that error, if any, was waived when appellants elicited the same testimony later in the trial.

We have examined the record and conclude that appellee's argument that appellants did not make the proper objection is without merit. Appellant made repeated objections on the grounds of both attorney—client privilege and settlement negotiations, and received a running objection from the court.

Appellee is correct that if appellants elicited the same testimony on cross-examination, then the error was waived. *Ball v. Yowell*, 222 S.W.2d 277, 280 (Tex.Civ.App. —Texarkana 1949, writ ref'd n.r.e.); *Kothmann v. Phipps*, 214 S.W.2d 201, 203 (Tex. Civ.App.—Fort Worth 1948, writ ref'd n.r.

dence.

**668**

e.). However, examination of the record suggests that the inquiries made on cross-examination referred to meetings between Durham and Stone in Durham's office with only the parties present—not the meeting where the statements concerning compromise and settlement were made in the presence of Durham's counsel.

The argument that the evidence was admissible for the limited purpose of showing malice is also without merit. TEX.R. EVID. 408 states that "[E]vidence of conduct or statements made in compromise negotiations is likewise not admissible." Over objection, appellant's counsel was called as a witness and ordered by the trial court to answer whether his client told Stone that Stone would have to take substantially less than what the agreement provided. This was error.

The exception for bias or prejudice or interest is a narrow one that refers to so-called "Mary Carter" agreements. *See City of Houston v. Sam P. Wallace & Co.,* 585 S.W.2d 669, 673 (Tex.1979). We hold that malice is not an exception to TEX.R. EVID. 408.

In *General Motors Corp. v. Simmons,* 558 S.W.2d 855, 857 (Tex.1977), the Court stated: "The traditional Texas rule is that settlement agreements between the plaintiff and a co-defendant should be excluded from the jury." In *City of Houston v. Sam P. Wallace & Co.,* the Court wrote that *information* about settlement agreements should be excluded from the jury. 585 S.W.2d at 673. We believe that Rule 408 is a further expansion of the confidentiality afforded settlement negotiations, for the rule excludes not just statements, but also evidence of conduct.

Evidence whether Durham liked or disliked Stone may be a proper subject for consideration by the jury, but that evidence must come from some other source than conduct and statements at a meeting to attempt a settlement. Appellants' eighth point of error is sustained and also requires reversal.

In that we sustained appellants' first two points of error, the judgment the trial court is REVERSED and judgment RENDERED that Stone take nothing from Durham.