**MARATHON OIL COMPANY, Appellant,**

v.

**James E. STERNER, Appellee.**

**No. A14–87–00259–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 14, 1988.

Wade B. Williams, Carla Bishop, Galveston, for appellant.

Gordon E. Davenport, Alvin, for appellee.

Before J. CURTISS BROWN, C.J., and ROBERTSON and CANNON, JJ.

**OPINION**

ROBERTSON, Justice.

This appeal is from a judgment entered on jury findings in an action for tortious interference with contract. Although ap-

pellant (Marathon) asserts seven points of error, the dispositive issue is whether there is any evidence that Marathon's interference with appellee's (Sterner's) contract of employment was not justified or legally excused. Holding there is no evidence that Marathon interfered without legal excuse or justification, we reverse.

Sterner was and had been for some time a boilermaker and member of a local union in Texas City. In 1975, while in the employ of Morris Construction Company, he was injured on Marathon's premises as a result of gas inhalation. He filed suit against Marathon to recover for injuries suffered. That lawsuit was tried in 1980, some nine months prior to the events giving rise to the present lawsuit. Marathon's defense to the 1980 lawsuit, based upon medical evidence, was that Sterner was not injured as a result of gas inhalation. However, the jury found for Sterner and awarded $25,000 in damages.

In November 1980 (about the same time the first lawsuit was concluded), Marathon entered into a contract with Ford, Bacon & Davis, as contractor, to build or rebuild a hot oil treating plant and a hydro treating plant at its refinery. The contract was on a cost-plus basis but was "somewhere in the neighborhood of six or seven million dollars." The contractor had been working for almost a year when the union local sent Sterner to the job.

On the first day, Sterner worked all day; on the second day shortly after lunch, he got "dizzy," was "upchucking and went to the house." As he was leaving the plant he saw one of Marathon's safety personnel who asked him what he was doing; he replied he was working. The next day when Sterner reported for work, he was advised by his pusher that he was terminated. The "pink slip," or payroll termination notice he received from the contractor, gave as the reason for termination "per Marathon's directive." Sterner then filed suit against Marathon, claiming Marathon interfered with his employment contract. In his original petition and first and second amended petitions he alleged he "was discharged by his employer as a result of the willful, intentional actions of Marathon Oil Company employees, agents and/or servants acting in the course and scope of their employment."

At the trial for tortious interference with contract, Marathon denied it had instructed Ford, Bacon & Davis to terminate Sterner. Rather, Marathon maintained simply that it did not want Sterner working on its premises but it was of no concern to Marathon if Ford, Bacon & Davis could use him elsewhere. Marathon based its position upon Sterner's testimony in the 1980 trial. It concluded from that testimony that Sterner was physically unable to do the work required under Marathon's contract with Ford, Bacon & Davis, and that to permit a person to work with the type of problems Sterner had "was taking an unnecessary risk," not only for Marathon but for the employee himself, the subcontractor, the other employees and the public in general.

Since appellee has agreed that appellant's statement of the case "is essentially correct" we quote the following from appellant's brief concerning appellee's physical condition:

> During the 1980 trial, Sterner related his past medical history, along with his current problems from the gas exposure. His testimony at the first trial against Marathon and at the trial of this case included the following medical problems, and resulting physical incapacity. In 1967, high pole rigging, which entails extensive amounts of climbing, was taken off Sterner's union card after he got shot. This was done because he has paralysis in his left arm which restricts his climbing ability. A left knee injury caused him to miss seven and a half months work, and resulted in a fifty percent disability to his knee. His right knee was also injured in high school. In the past, Sterner missed three months work when he fell off a scaffold and injured his spine. In addition to a neck/disc injury which caused him to miss two months work, he also sustained a broken hand and missed work. Sterner also has a history of hypertension.

In addition to the above medical problems, Sterner testified in his 1980 trial against Marathon Oil Company that the gas inhalation had further restricted his work ability. He could not even bowl or "run as much as two blocks" because of chest pains. He had difficulty breathing when he got nervous or upset and was required to climb. He was unable to perform structural steel work because of the climbing required. Breathing was such a problem that he had to take "one step at a time" when climbing. Coupled with the difficulty climbing, he also had problems with dizziness and light-headedness. He continued to have these problems five years after the 1975 accident. Sterner was released from other jobs because of his inability to work after the 1975 accident. In fact, he had received termination slips which actually had "Unable to Work" noted on them. Similarly, he had "missed out" on other jobs because of his inability to climb. At the union hall, it was a known fact that he could not climb, so that the union had "passed over" him for specific jobs that required climbing. Due to his past and present medical conditions, Sterner was basically unable to breathe, climb, run, or even bowl for recreation.

■ In its first point of error appellant contends the court erred in failing to grant its motion for directed verdict and in overruling its motion for judgment n.o.v. because there is no cause of action for tortious interference with contract when employment is terminable at will. While a conflict had existed among Texas intermediate appellate courts on this issue, we believe the supreme court settled the issue when it held in *Clements v. Withers*, 437 S.W.2d 818 (Tex.1969), that the unenforceability of a contract is no defense to an action for tortious interference with its performance. Although the specific question in *Clements* concerned the enforceability of a contract that did not comply with the statute of frauds, there is no reason why the announced rule would not apply to a contract terminable at will. Accordingly, we so hold. Appellant's first point is overruled.

In its second point of error appellant contends there is no evidence or, alternatively, insufficient evidence, to support the jury findings that Marathon's interference with Sterner's employment contract was not justified or legally excused. Appellant preserved this contention by motion to disregard jury findings, motion for judgment notwithstanding the verdict, and motion for new trial.

It is beyond dispute, and appellee so acknowledges, that one is privileged to interfere with another's contract if it is done in a bona fide exercise of his own rights or if he has an equal or superior right in the subject matter to that of the other party. *Sakowitz v. Steck*, 669 S.W.2d 105 (Tex. 1984); *Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80 (Tex. 1976); *Delz v. Winfree*, 80 Tex. 400, 16 S.W. 111 (1891). In *Sakowitz*, the supreme court held that to establish the elements of a claim of tortious interference, a plaintiff must show the defendant "maliciously" interfered with the contractual relationship without legal justification or excuse.

The term "malice" has varied meanings, but when used in the context of interference with contract or employment relations, it is a term of art. *Rural Development, Inc. v. Stone*, 700 S.W.2d 661, 666 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). This principle was clearly enunciated in the early case of *Tidal Western Oil Corp. v. Shackelford*, 297 S.W. 279, 280–81 (Tex.Civ.App.—Fort Worth 1927, writ ref'd) by the following:

It may be conceded for the purposes of argument that it is not necessary in every case that the party interfering shall have acted with malice, express or implied, but we think it must certainly be held ... that the acts of interference to be actionable must have been knowingly done without right or justifiable cause.

And the court then recognized the converse by stating:

Indeed, it has more than once been held in this state that the assertion of a legal right affords no foundation for a recov-

ery of damages, even though it be with malice.

Thus, in *Sakowitz*, the court stressed that the malice of which it spoke was "an act without excuse or just cause." While the *Sakowitz* case involved a summary judgment, the rules announced there clearly apply to a trial before the jury. *See Rural Development, Inc. v. Stone*, 700 S.W.2d at 666. We apply those rules to the case before us.

■ In submitting the case to the jury, the trial court inquired, in special issue one, whether Marathon "interfered with Plaintiff's employment." "Interference" was defined as "intentional and willful acts calculated to cause harm to the person interfered with." In special issue two the jury was asked whether "such interference was justified or legally excused." In determining whether there is any evidence that Marathon maliciously interfered with the contract between Sterner and the contractor, we will consider only that evidence and the reasonable inferences therefrom tending to support the jury's finding, and will disregard all contrary evidence. *King v. Bauer*, 688 S.W.2d 845, 846 (Tex.1985); *Sharpe v. Safway Scaffolds Co. of Houston*, 687 S.W.2d 386, 391 (Tex.App.—Houston [14th Dist.] 1985, no writ).

Appellee's evidence consists of the deposition testimony of the witness Burks, answers to requests for admissions, and appellee's own testimony. Burks was construction superintendent for Ford, Bacon & Davis at the time of Sterner's discharge. He identified the payroll termination slip for Sterner, and stated the reason assigned for termination—"per Marathon's directive"—was given to him by someone "from their top management." However, he stated that "they did not give [him] a specific reason for terminating Mr. Sterner." He further stated that Sterner and another employee were "barred from entering the plant." He gave no other testimony relevant to the issue of Marathon's interference with contract without legal justification or excuse.

The affirmative answers to requests for admissions showed that in Sterner's previous lawsuit against Marathon, the jury awarded $25,000 to Sterner; that Marathon appealed; and that the judgment was affirmed. By a negative answer, Marathon denied "that one of [its] employees instructed an employee of Ford, Bacon & Davis, Inc. to terminate James E. Sterner's employment with that company."

Sterner's testimony of relevance to the issue of malice or just cause and excuse is as follows: He stated that as he was leaving the Marathon plant on his second day of work (after he became sick) he "passed by one of Marathon's safety personnel in a truck. And he asked me what I was doing out there, and I told him, 'I am working.' And he stated to me not if he had anything to say about it. And that's all he said." Sterner continued that the next morning when he arrived he was "pink slipped" or discharged.

Sterner also acknowledged generally all his injuries and his incomplete recovery from them. He further acknowledged he could not climb, but stated that climbing was unnecessary at the time he was discharged because he and others were working on the heat exchanger on the ground. Finally, he intimated that because the union followed a "pecking order," if a worker could not do the work his card called for, the supervisor would try to put him on jobs he could do.

Maintaining the evidence is both legally and factually sufficient to support the jury finding of Marathon's interference without legal justification or excuse, Sterner points to the following: (1) Marathon's denial that it ordered Sterner's termination; (2) the pink slip issued by Ford, Bacon & Davis stating Sterner's termination was at the "directive of Marathon management"; (3) Marathon's loss of the 1980 lawsuit, which it felt was a reflection on its plant and safety procedures; and (4) Marathon's feeling that it should "stick with its testifying expert's opinion" and thus rely on the doctor's 1980 trial testimony that nothing was wrong with Sterner.

While this evidence may demonstrate that Marathon acted with malice in the sense that Marathon may have had "ill will,

spite or evil motive," the evidence focuses only on Marathon's possible "hard feelings" toward Sterner. It is no evidence that Marathon was acting *without just cause or excuse.* *Rural Development, Inc. v. Stone,* 700 S.W.2d at 666. Marathon was entitled to exercise its own rights in prohibiting workmen from coming on its premises to do labor on construction in progress, if it believed the workmen were physically incapable of performing the work. As stated by the court in *Tidal Western Oil Corp. v. Shackelford,* 297 S.W.2d at 281, and again recognized by the supreme court in *Sakowitz v. Steck,* 669 S.W.2d at 107:

> It would be a strange doctrine indeed to hold that a person having a well grounded and justifiable belief of a right in or to property may be held liable in damages because of an assertion of such a right.

Accordingly, we hold there is no evidence to support the jury finding that Marathon maliciously interfered without just cause or excuse with the contract of employment between Sterner and Ford, Bacon & Davis. Were we to reach the question of whether the evidence is factually sufficient to support such finding, we would likewise find insufficient evidence. Appellant's second point of error is sustained. In view of this holding, it is unnecessary to address appellant's other points of error or appellee's cross-points.

The judgment is reversed and here rendered that Sterner take nothing.