The COASTAL CORPORATION and ANR Pipe Line Company, Appellants,

v.

ATLANTIC RICHFIELD COMPANY, Ashland Oil, Inc., and Tecumseh Pipe Line Company, Appellees.

No. 13–91–493–CV.

Court of Appeals of Texas, Corpus Christi.

April 15, 1993.

Tracy N. DuBose, Tracy N. DuBose & Associates, Montgomery, Nancy M. Simonson, Canales & Simonson, Corpus Christi, for appellants.

Travis C. Broesche, Celso Gonzalez–Falla, Carlos Garcia, Marie R. Yeates, Vinson & Elkins, Houston, J. Michael Mahaffey, Kleberg & Head, Jorge C. Rangel, Rangel & Chriss, Corpus Christi, Randall W. Wilson, Michael A. Lee, Susman Godfrey, Houston, for appellees.

Before NYE, C.J., DORSEY and GILBERTO HINOJOSA, JJ.

## *OPINION*

DORSEY, Justice.

Coastal Corporation and its wholly-owned subsidiary, ANR Pipe Line Company, appeal from take-nothing summary judgments in a suit for breach of an oral contract to buy securities, tortious interference with business relations, and fraud. The essential issue is the existence of a valid contract. The trial court's judgment is affirmed.

Tecumseh Pipe Line Company owns and operates an interstate crude oil pipeline lying between Indiana and Ohio. Arco,

Ashland, and Unocal, appellees here, own 100 percent of Tecumseh's capital stock: Arco and Unocal own 40 percent each, while Ashland owns the remaining 20 percent. The owners decided to sell Tecumseh's capital stock in 1987, soliciting bids from various companies, including Coastal. Coastal offered the highest bid and presented a draft stock purchase agreement to the owners. The parties began negotiations. After a negotiating session on August 13, 1987, the parties had agreed upon several substantive changes and reached what they believed to be a "handshake" agreement on the essential and material terms of the transaction. The owners agreed to reduce this to writing. Coastal contends that the resulting document, sent shortly after the August 13th negotiations, "memorialized" the parties' agreement. Coastal presumed to have a contract with the owners to purchase 100% of their Tecumseh stock.

This agreement included Coastal's pledge to acquire Tecumseh's pipeline as an operating crude oil pipeline, and its assumption of responsibility for converting the line to natural gas service. Shortly thereafter, Coastal began discussing the potential affects of this transaction with Laketon Refining Corporation. Laketon's refinery was located along the Tecumseh pipeline and was dependent upon Tecumseh for crude oil. Laketon told Coastal that it had a substantial claim against Arco, as the current operator of that line, for continued crude oil service. Laketon threatened to do everything in its power to halt a conversion of the pipeline from a carrier of crude oil to natural gas.

As a result, Coastal informed Arco and the other sellers that it would only proceed with the Tecumseh stock sale agreement if the sellers would indemnify Coastal for Laketon's claims. Coastal contended that under the parties' agreement, it was liable only for the expenses of dealing with the regulatory authorities and participating in the necessary litigation to receive permits and permission to convert the line to, and operate it as, a natural gas line. Arco disagreed, stating that under the post-August 13th agreement, Coastal had agreed to assume all risks and liabilities with regard to conversion of the pipeline. Arco refused to assume any potential liability incurred as a result of Laketon's actions. The pipeline was not sold to Coastal.

Coastal sued Arco, Ashland, and Unocal for breach of contract, sued Arco for tortious interference with business relations, and sued both Arco and Tecumseh for fraud. Coastal's theory of the case was that a valid contract for the sale of the pipeline had been entered into. Unocal moved for summary judgment on the grounds that it did not breach the purported contract, fully intending at all times to consummate the agreement. The trial court granted Unocal's motion. The court then broadly entered summary judgment on behalf of Arco, Ashland, and Tecumseh.

By its first point of error, Coastal contends that the August 13th agreement between the parties constituted a valid, enforceable contract for the sale of Tecumseh's stock. Coastal asserts that on August 13th "we came to absolute agreement on the essential terms. We got up and shook hands and hugged each other...." The parties agreed, among other things, that Coastal would pay $17.1 million for 100% of Tecumseh's stock. The parties also negotiated environmental liability, agreeing that the owners would maintain possession of a terminal that was particularly problematic, that Coastal, rather than the owners, would be responsible for converting the pipeline from crude oil to natural gas, that Coastal would be responsible for finding a solution for the potential conflicts with Laketon, and that specified oil inventory and working capital adjustments would apply.

The primary issue is whether an enforceable contract exists. Appellees contend that one does not, relying upon section 8.319 of the Business and Commerce Code, entitled "Statute of Frauds," which provides, in pertinent part,

A contract for the sale of securities is not enforceable by way of action or defense unless:

(1) there is some writing signed by the party against whom enforcement is sought ... sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; * * *

TEX.BUS. & COM.CODE ANN. § 8.319 (Vernon 1991).

■ It is uncontroverted that the subject of this alleged contract is the sale of securities, as that term is defined by section 8.102(a) of the Business and Commerce Code. The transaction is therefore governed by section 8.319, which requires a writing indicating that a contract has been made and signed by the party against whom it is sought to be enforced. Coastal, although alleging an oral contract, relies upon a post-August 13th writing that "memorializes" the agreement. That writing contains a provision expressly stating that execution of the agreement is required in order for it to be binding on the parties. That section provides,

19. *Entire Agreement; Execution Required*

This Agreement and the documents to be delivered pursuant hereto supersedes all prior negotiations, constitutes the entire agreement between the parties and can be amended only by written agreement signed by the parties. Nothing in this Agreement shall be binding upon any of the parties until this Agreement is executed by all of the parties by their duly authorized officers.

Coastal contends that this provision was arbitrarily added to the agreement by the owners and was not agreed to by Coastal itself; therefore, the provision should not be binding on Coastal and should not operate to place the agreement outside the statute of frauds.

Coastal itself, in its May 15th, 1987 letter to the president of Tecumseh Pipe Line Co., stated that it offered to buy all of the issued and outstanding shares of the capital stock of Tecumseh "subject to the negotiation, preparation and execution of a definitive purchase agreement in form and substance satisfactory to the Owners and Coastal setting forth the terms provided herein and such further terms and conditions as are reasonable and customary in a transaction of the type contemplated hereby." Coastal refers repeatedly to the "execution of the Purchase Agreement" in its purchase offer.

■ Moreover, Coastal asserted below and on appeal that the post-August 13th draft at issue memorializes the parties' agreement. When a party relies upon a memorandum of a contract, it cannot disregard unfavorable provisions. *See Hall v. Hall,* 158 Tex. 95, 308 S.W.2d 12, 17 (1957). Coastal cannot therefore assert reliance upon, and the validity of, the document in all respects save for the execution requirement.

Coastal contends in the alternative that TEX.BUS. & COM.CODE ANN. § 8.319(4) (Vernon 1991) applies to establish this agreement within the statute of frauds. Section 8.319(4) provides,

(4) The party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price.

This section requires an admission that a contract was made. While all of the parties do concede that they reached agreement on particular issues, it is clear that the owners did not consider themselves to have a contract. The document memorializing the agreement expressly required that it be executed. The owners were aware of this; in fact, it is Coastal's contention that the owners inserted the execution provision of their own accord. Coastal mistakes agreements during the negotiation process with a binding contract. No owner has admitted executing a contract with Coastal.

Coastal failed to raise any evidence to preclude the granting of summary judgment in favor of Arco and Ashland on the basis of the statute of frauds. Coastal was unable to direct this court's attention to any document or series of documents, or to any admissions by the owners, that showed a final agreement between the parties. All documents and admissions referred back to

the post-August 13th writing as either a draft or a tentative agreement. Necessary exhibits had yet to be attached. Moreover, that document contained an execution provision that was never complied with. Point one is overruled.

■ By points of error two and three, Coastal contends that the doctrine of promissory estoppel precludes appellees from asserting the statute of frauds. In order to avoid summary judgment, the burden lay on Coastal to present summary judgment proof raising a fact issue on its promissory estoppel defense to the statute of frauds. *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 936–37 (Tex.1972); *Cobb v. West Texas Microwave Co.*, 700 S.W.2d 615, 616 (Tex.App.—Austin 1985, writ ref'd n.r.e.). The promissory estoppel doctrine provides that when a party makes a promise and reasonably expects the promisee to rely on that promise by acting or refraining from acting in some manner, in order to avoid injustice, the promise is binding against the promissor. *"Moore" Burger*, 492 S.W.2d at 938; *see also Fretz Constr. Co. v. Southern Nat'l Bank*, 626 S.W.2d 478, 480 (Tex.1981).

Coastal contends that it satisfied its burden to raise a fact issue with regard to promissory estoppel via the affidavit of Mike Morris, Director and Executive Vice President of ANR at the time of the August, 1987 negotiations. Morris stated that,

> When we reached agreement on the essential terms and conditions of the transaction, the representatives of the Owners and I shook hands. The Owners agreed and promised to sign a written agreement fully reflecting our handshake deal.

■ Promissory estoppel is allowed as an exception to the statute of frauds only when the enforcement of the statute would plainly amount to fraud. *Nagle v. Nagle*, 633 S.W.2d 796, 799 (Tex.1982) (quoting *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114 (1921)). Moreover, in contract cases, the determinative promise is limited to the promise to sign a prepared written

agreement that complies with the statute of frauds. *Nagle*, 633 S.W.2d at 800; *"Moore" Burger*, 492 S.W.2d at 940; *Cooper Petroleum Co. v. La Gloria Oil & Gas Co.*, 436 S.W.2d 889, 896 (Tex.1969). The Texas Supreme Court in *"Moore" Burger* emphasized the limited application of promissory estoppel to statute of frauds claims in its opinion on rehearing in the case. It then reiterated this instruction in *Nagle*. A complete agreement on the terms and wording of the written contract is required to permit the application of promissory estoppel to a statute of frauds defense. *"Moore" Burger*, 492 S.W.2d at 436; *H. Molsen & Co. v. Hicks*, 550 S.W.2d 354, 356 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.); *Boddy v. Gray*, 497 S.W.2d 600, 605 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.).

■ Promissory estoppel is applied when a party promises to sign an *existing* written contract that would satisfy the statute of frauds (but for the lack of a signature). When a document remains to be prepared, as in this case, all of the terms must ultimately be agreed to in writing. *H. Molsen*, 550 S.W.2d at 356. In *H. Molsen*, the record showed that the parties negotiated and a written document was prepared, but changes were yet to be made in the document and the sellers' attorney had to approve the contract before it could be executed. The Court held that although the written document memorializing the agreement was not in evidence, "whatever its terms were, there was no meeting of the minds as to the *final terms* and no acceptance by the [sellers] of the *writings.*" *Id.* at 356 (emphasis added). Promissory estoppel was not established to bar the application of the statute of frauds in that case. *Id.* at 356.

In *Southmark Corp. v. Life Investors, Inc.*,[1] the Fifth Circuit applied Texas law to a case strikingly similar to the one at bar. In that case, a prospective stock purchaser brought suit against the seller of the stock as well as the party who ultimately purchased that stock, alleging, among other things, breach of contract. Southmark, the

---

1. 851 F.2d 763 (5th Cir.1988).

buyer, contended that it had an oral agreement with Life Investors to purchase some $63 million worth of stock. Life Investors countered with a statute of frauds defense, and Southmark replied that promissory estoppel would bar the use of that defense. Southmark introduced the affidavits of two of its vice-presidents, who stated that Life representatives told them an agreement had been reached and that Life would execute final documents evidencing the agreement. Southmark contended that these affidavits raised a fact issue regarding promissory estoppel.

The Fifth Circuit relied upon Texas decisions such as *"Moore" Burger, Nagle,* and *Consolidated Petroleum Inc. v. Jacobs,* 648 S.W.2d 363 to limit the applicability of promissory estoppel to cases in which a party promised to sign a written agreement that had already been prepared and that would satisfy the statute of frauds. The Court's rationale is particularly instructive in this case. The Court found,

> at most the parties contemplated final documents that were to be prepared and approved sometime in the future. But in a transaction involving the sale of a controlling share of the stock of an ongoing business at a purchase price in the tens of millions of dollars ... there is certainly an expectation on both sides that documents will be prepared once the parties reach an agreement. We cannot say that ... justice requires the enforcement of an oral promise to reduce the agreement to writing or to execute final documents at a later time, especially where, as here, it does not appear that the parties had even worked out the final details of the alleged transaction.

*Southmark,* 851 F.2d at 769. The Court found that the statute of frauds would be rendered meaningless if promissory estoppel were applied to situations in which parties acknowledge agreement and the need to convert that agreement into writing, especially when the wording of the document has yet to be agreed upon. The Court concluded by finding, pursuant to Texas law, that proof of either an existing written document, or an agreement on the wording of that document, is required to raise a fact issue of promissory estoppel. *Id.*

As explained by Coastal in its appellate brief, on August 13, the parties agreed to such complex matters as: 1) environmental liability, particularly the owners' retention of an environmentally risky terminal, 2) Coastal's responsibility for conversion of the pipeline from crude oil to natural gas, 3) Coastal's responsibility for dealing with Laketon's reaction to the conversion of the crude lines to gas lines, and 4) specified oil inventory adjustments and working capital adjustments. In a complex securities purchase agreement, the wording of terms such as these is not generally established by mere verbal agreement. The written memorial of that August 13 negotiation was only tentative and the writing was a draft. Promissory estoppel cannot be used to avoid the statute of frauds in a case in which the parties were clearly still negotiating the final wording of their binding contract. Accordingly, because the agreement made between Coastal and the owners on August 13, 1987, was not an agreement regarding either an existing, already-prepared document, or an agreement on the precise wording of that document, Texas jurisprudence expressly prohibits the application of promissory estoppel to this case. Points two and three are overruled.

By point of error four, Coastal contends that the trial court erred by granting summary judgment in favor of Arco on Coastal's tortious interference claim. Coastal maintained that Arco's refusal to close the security purchase agreement interfered with Coastal's business relationships and agreements with Unocal and Ashland. Arco alleged in its motion for summary judgment that because it was a party to the transaction, it could not interfere with its own relationship or contract. In the alternative, Arco averred that it was privileged to refuse Coastal's terms for sale.

Interference with a prospective contract or business relationship consists of several elements. These include: 1) a reasonable probability that the parties would have entered into a contractual relationship, 2) an intentional and malicious act

by the defendant that prevented the relationship from occurring 3) with the purpose of harming the plaintiff, 4) the defendant lacked the privilege or justification to do the act, and 5) actual harm or damage resulted from the defendant's interference. *Exxon Corp. v. Allsup*, 808 S.W.2d 648, 659 (Tex.App.—Corpus Christi 1991, writ denied); *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 565 (Tex.App.—Dallas 1989, no writ). However, Texas Courts have held that one cannot tortiously interfere with his own contract. *Schoellkopf v. Pledger*, 778 S.W.2d 897, 902 (Tex.App.—Dallas 1989, writ denied); *Frost Nat'l Bank v. Matthews*, 713 S.W.2d 365, 369 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.). "Liability for tortious interference is founded only on the acts of an interfering third party." *Schoellkopf*, 778 S.W.2d at 902 (citing J. Edgar & J. Sales, *Texas Torts and Remedies* § 46.02[4][e] (1988)). In *Matthews*, an oil and gas case, the court held that because Matthews and the other litigants were all parties to the oil and gas lease at issue, Matthews could not have tortiously interfered with his own lease contract as alleged. *Id.* at 369. This Court, too, has held that intentional interference with a contract requires the act of a third party, not a party to the contract. *Rural Dev., Inc. v. Stone*, 700 S.W.2d 661, 667 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). We reasoned that when one of the *parties* to the contract interferes with it, the action is one for breach of contract. *Stone*, 700 S.W.2d at 667. Arco, as a party to the agreement, could not have tortiously interfered with its own agreement. Point of error four is overruled.

By point of error five, Coastal alleges that Tecumseh and Arco committed fraud when inducing Coastal to enter into this contract.

■ Coastal bases its entire fraud argument on the presumption that a contract was created between the parties. However, no binding contract existed. A finding of fraud requires proof that a party believed a deceitful representation and, relying on it, contracted or acted to its detri-

ment. *Thrower v. Brownlee*, 12 S.W.2d 184, 186 (Tex.Comm.App.1929).

Where false representations or promises are made to induce another to act, and, before such other does act, he learns of the falsity of such representations or promises, it cannot of course be said that he relied upon them believing them to be true, for, knowing their falsity, he has not been deceived.

*Thrower*, 12 S.W.2d at 186–87. The Court qualified this rule, limiting its application only to cases in which the complaining party had not changed its position for the worse. *Id.* at 187. The rule will not be applied when the contract is more than merely executory, that is, when the contract has been partly or wholly performed to such an extent that the complaining party could not have fully protected itself. *Id.* at 187. Similarly, the Texas Supreme Court has held that reliance on a representation that results in entry into an obligation is actionable. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 931 (Tex.1983).

Coastal contends that at the time of the August 13 agreement, they *believed* they were *obligated* to perform under the agreement. This subjective feeling of obligation is not the type recognized by Texas Courts. At the time Coastal learned of Arco's alleged misrepresentations, no binding agreement existed between the parties at that time or at any other; they were still in the process of negotiating the final stock purchase agreement. That agreement had to be executed by the parties in order that it have a legally obligatory affect on Coastal. That execution never occurred. Therefore, Coastal met with Laketon agents of its own accord—it was not required to do so under any established contract. Having learned of the fraud during those meetings in September, 1987, any further actions taken by Coastal in furtherance of the agreement were taken with full knowledge of Arco's representations. Equally important, those actions, too, were not required under any binding contract between the parties. Coastal is unable to show that it assumed an obligation or entered into more than a mere executory contract with Arco in reliance upon Arco's representations. More-

over, any refusal to pursue alternative acquisitions cannot be deemed forbearance as a result of fraudulent representations. In September, upon learning of Laketon's claims, Coastal could well have terminated all negotiations with the owners and pursued other options. Rather, Coastal chose to continue negotiating with a party it later accused of committing fraud. The trial court properly granted summary judgment in favor of Arco on Coastal's fraud claim against it.

Coastal also alleged that Tecumseh committed fraud because Arco was Tecumseh's agent, and therefore if the agent committed fraud, then Tecumseh, as its principal, was liable for the acts of its agent. Because Arco committed no fraudulent acts, any similar claim against Tecumseh must fail as well. Point of error five is overruled.

All issues necessary to the disposition of this appeal have been addressed. *See* TEX. R.APP.P. 90(a).

The trial court's judgment is AFFIRMED.