[No. 2843-3. Division Three. March 13, 1979.]

EMIL A. REYNOLDS, *Appellant,* v. THE INSURANCE COMPANY OF NORTH AMERICA, *Respondent.*

*Charles B. Phillips,* for appellant.

*John W. Lohrmann,* for respondent.

GREEN, C.J.—In June 1971, Mr. Reynolds was injured at work, and he accepted as compensation a monthly pension from The Insurance Company of North America (INA), his employer's voluntary workmen's compensation carrier. The pension amount was based on what Mr. Reynolds would have received had he been covered by the workmen's compensation act. In 1977, he brought this action against INA,

seeking an increase in his pension relying upon amendments to the workmen's compensation act enacted subsequent to his injury and his settlement with INA. The trial court granted INA summary judgment and dismissed Mr. Reynolds' claim. He appeals.

The sole issue is whether INA is liable to Mr. Reynolds under its policy for subsequent statutory increases in pension schedules. We affirm.

On the date of Mr. Reynolds' injury, the workmen's compensation act, RCW 51, did not cover his job classification. However, his employer, Walla Walla College, carried liability insurance through INA which covered the college for its common–law liability for negligence to an injured employee or in the alternative provided voluntary workmen's compensation coverage. Under the latter coverage, the injured employee is eligible for payments in "an amount equal to the compensation and other benefits which would have been payable under [the workmen's compensation] law had . . . [he] and the insured been subject to such law with respect to such employment."

Mr. Reynolds elected to take the voluntary workmen's compensation coverage. As a condition precedent to this coverage, the policy required him to execute a full and binding release of all his claims against the college and against INA. Upon the representation of the insurance company that the policy paid "an injured employee just as though he were covered under the Washington state compensation act," Mr. Reynolds signed a release. By the terms of the release, INA assumed "liability to pay . . . according to the schedule of benefits as provided by the workmen's compensation laws of Washington effective as of the above date of accident . . ."[1] Mr. Reynolds states that Charles

---

[1]RCW 51.32.060, at the time of the injury in question read:

"When the supervisor of industrial insurance shall determine that permanent total disability results from the injury, the workman shall receive monthly during the period of such disability:

Davis, a representative of Walla Walla College, advised Mrs. Reynolds that he would have difficulty proving negligence on the part of the college if he sued, that the release would not operate to limit benefits under the policy's workmen's compensation coverage, and that the policy coverage afforded him the same benefits as the state's workmen's compensation program.

In 1973, the legislature amended RCW 51.32.070[2] and thereby raised the benefits payable under the workmen's compensation act. The amendment retroactively covered persons receiving pensions for total disability under the act pursuant to schedules in effect prior to July 1, 1971. Then, in 1975, the legislature repealed RCW 51.32.070 enacted in

---

"(1) If unmarried at the time of the injury, the sum of one hundred eighty-five dollars.

"(2) If the workman has a wife or invalid husband, but no child, the sum of two hundred fifteen dollars.

". . .

"(4) If the workman has a wife or husband and a child or children, or, being a widow or widower having any such child or children, the monthly payment in subdivisions (2) and (3) shall be increased by thirty-seven dollars for the youngest or only child, thirty-one dollars for the next or second youngest child . . ."

Since Mr. Reynolds was married and had two children at the time of the injury, he received a pension of $283.

[2]Laws of 1973, ch. 147, § 2, provided:

"Notwithstanding any other provision of law, every surviving spouse receiving a pension under this title and every permanently totally disabled workman or temporarily totally disabled workman receiving a pension or compensation for temporary total disability under this title pursuant to compensation schedules in effect prior to July 1, 1971, shall, after the effective date of this 1973 amendatory act, be paid fifty percent of the average monthly wage of the state as computed under RCW 51.08.018 per month, and an amount equal to five percent of such average monthly wage per month if married, and an additional two percent of such average monthly wage for each child.

". . .

"No part of such additional payments shall be payable from the accident fund or be charged against any class under the industrial insurance law.

"The director shall pay monthly to every such surviving spouse and totally disabled workman from the supplemental pension fund such an amount as will, when added to the pensions or temporary total disability compensation they are presently receiving, equal the amounts hereinabove specified."

1973, and replaced it with RCW 51.32.072.[3] The new statute also increased benefits for those receiving a pension under Title 51, and provided for payment from a supplemental pension fund created by the legislature. *See* RCW 51.44.033.[4]

██ Mr. Reynolds contends that under the terms of the policy INA must pay him the same benefits he would have received under the workmen's compensation act as it existed at the time of his injury and under any subsequent amendments of the act. As we noted, the policy provides for benefits equal to that "which would have been payable" under the act. The construction of the contractual language is governed by the law in existence at the time the parties enter into their agreement, unless they indicate a contrary

---

[3]RCW 51.32.072 reads:

"Notwithstanding any other provision of law, every surviving spouse and every permanently totally disabled workman or temporarily totally disabled workman, if such workman was unmarried at the time of his injury or was then married but the marriage was later terminated by judicial action, receiving a pension or compensation for temporary total disability under this title pursuant to compensation schedules in effect prior to July 1, 1971, shall after July 1, 1975, be paid fifty percent of the average monthly wage in the state as computed under RCW 51.08.018 per month and an amount equal to five percent of such average monthly wage per month to such totally disabled workman if married at the time of his injury and the marriage was not later terminated by judicial action, and an additional two percent of such average monthly wage for each child of such totally disabled workman at the time of injury in the legal custody of such totally disabled workman or such surviving spouse up to a maximum of five such children. The monthly payments such surviving spouse or totally disabled workman are receiving pursuant to compensation schedules in effect prior to July 1, 1971 shall be deducted from the monthly payments above specified.

". . .

"No part of such additional payment shall be payable from the accident fund.

"The director shall pay monthly from the supplemental pension fund such an amount as will, when added to the compensation theretofore paid under compensation schedules in effect prior to July 1, 1971, equal the amounts hereinabove specified."

[4]RCW 51.44.033 provides:

"There shall be, in the office of the state treasurer, a fund to be known and designated as the 'supplemental pension fund'. The director shall be the administrator thereof. Said fund shall be used for the sole purpose of making the additional payments therefrom prescribed in this title."

intent. *See Clark v. Eltinge,* 38 Wash. 376, 378, 80 P. 556 (1905); A. Corbin, *Contracts* § 551 (1960); and 11 R. Anderson, *Couch on Insurance* § 44:36, at 549 (2d ed. 1963). Here, the reasonable commercial expectations of the contracting parties support an interpretation of the policy which limits INA's liability to the workmen's compensation schedule in effect at the date of Mr. Reynolds' injury.

When INA and Walla Walla College entered into their insurance contract, Washington's workmen's compensation act covered only those employments specifically classified as extrahazardous. The Industrial Insurance Act of 1971, which became law after Mr. Reynolds was injured, substantially modified the workmen's compensation act. Under the new act, coverage is mandatory except for those employments specifically excluded. As a result, the necessity for the policy in this case was removed under the new act. In 1971, INA and Walla Walla College could not reasonably foresee that the legislature would enact a workmen's compensation law which would cover the same employments covered by their policy. Nor could they reasonably foresee the consequence of this development, *i.e.,* the exposure of the insurer to increased liability coupled with a loss of premiums as insureds cancelled policies they no longer needed. A fair interpretation of the policy language must take into consideration the expectations of the contracting parties. Therefore, we hold that INA is not liable to Mr. Reynolds for increased benefits based upon the subsequent amendments to the workmen's compensation act. *Cf. Forsman v. Aetna Cas. & Sur. Co.,* 22 Wn. App. 394, 590 P.2d 353 (1979).

■ Moreover, the fact that the policy required Mr. Reynolds to execute a release evidences an intent to limit INA's liability to the pension amount then provided by statute. Generally, a release serves the purpose of protecting the insurer from future claims. The specific purpose of the release in question must have been to settle the amount of INA's liability, because Mr. Reynolds already had released his common–law action for negligence by electing

to take the workmen's compensation coverage. Otherwise, the release requirement would be without effect. Restated, if the parties had intended to leave this coverage open–ended, they would not have required a release. The policy must be construed to give effect to the release provision.

Mr. Reynolds also complains that the release, contrary to the representations of agents of both INA and the college, restricted the extent of coverage available to him under the policy. Therefore, he argues that INA obtained the release without consideration and that its enforcement would violate public policy. Since we have held that the benefits payable under the insurance policy itself are limited to the benefits payable under the workmen's compensation law in effect at the time of the injury, the premise of Mr. Reynolds' additional arguments falls. Therefore, this contention fails.

Affirmed.

MUNSON and ROE, JJ., concur.

Reconsideration denied May 7, 1979.

Review denied by Supreme Court August 22, 1979.