**Dennis H. BIRENBAUM, M.D., Appellant,**

v.

**OPTION CARE, INC., Appellee.**

**No. 05–95–01088–CV.**

Court of Appeals of Texas, Dallas.

Oct. 3, 1997.

---

Joseph J. Mastrogiovanni, Jr., Mastrogiovanni & Schorsch, P.C., Dallas, for Appellant.

R. Douglas Rees, Cooper, Aldous & Scully, Dallas, Joseph Bonaccorsi, Sanchez & Daniels, Chicago, for Appellee.

Before MALONEY, JAMES and MOSELEY, JJ.

### OPINION ON MOTION FOR REHEARING

MOSELEY, Justice.

We grant appellant's motion for rehearing. We withdraw our opinion of May 2, 1997 and vacate our previous judgment. The following is now the opinion of the Court.

Appellant Dennis H. Birenbaum, M.D., sued appellee Option Care, Inc., for damages arising from Option Care's refusal to pur-

chase stock owned by Birenbaum. The trial court granted Option Care's motion for summary judgment, which argued that Birenbaum's causes of action were barred by the statute of frauds. Birenbaum appeals on four points of error, contending: (1) the summary judgment evidence showed that an agreement to purchase the stock was evidenced by a writing sufficient under the statute of frauds; and (2) material issues of fact existed on whether (a) the writing was sufficient under the statute of frauds, (b) promissory estoppel acted as an exception to the statute of frauds, and (c) partial performance acted as an exception to the statute of frauds. We disagree and affirm.

## STANDARD OF REVIEW

The function of summary judgment is not to deprive a litigant of the right to a full hearing on the merits of any real issue of fact but to eliminate patently unmeritorious claims and untenable defenses.[1] The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit; rather, it provides a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of fact remains.[2]

In reviewing a summary judgment record, this Court applies the following standards:

1. The movant for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, we take evidence favorable to the nonmovant as true.

3. We indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor.[3]

Further, we do not consider evidence that favors the movant's position unless it is uncontroverted.[4] From this perspective, we review the evidence as set forth in the record.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1992, Birenbaum negotiated with Option Care and others to sell his stock in Metroplex Infusion Care, Inc. ("Metroplex"), a company wholly owned by Birenbaum. Metroplex was in the business of providing home health care medical services. Birenbaum received offers to purchase all or part of his Metroplex stock from several parties. Option Care offered to purchase eighty percent of Birenbaum's stock at a price to be determined by a defined formula. Birenbaum considered Option Care's offer superior to offers made by competing bidders and, relying on Option Care's representations that an agreement had been reached, he ceased negotiations with other potential buyers.

Subsequently, on March 25, 1992, Sheldon Asher, president and CEO of Option Care, sent a document by "fax" to Birenbaum's attorney, Michael Ginsberg. The document contained a diagram of the transaction and subsequent business relationship under discussion between Birenbaum and Option Care. Under the heading "Business Structure Points Discussed," the document discussed, among other things, a "put" option under which Birenbaum could sell off a portion of his stock to Option Care at a price to be determined by a defined formula. The document contained numerous handwritten changes by Asher but was not signed. However, Asher affixed to the top of the document a "Post-it Note" labeled "Fax Transmittal Memo," which, along with information identifying the sender, the recipient, and their fax numbers, contained the following handwritten message from Asher:

Michael, I marked up this document as you suggested. I can catch up to you next

1. See Gulbenkian v. Penn, 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952).

2. See Gaines v. Hamman, 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962).

3. Tex.R. Civ. P. 166a(c); Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548 (Tex. 1985).

4. Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).

week. The loan is moving along with discussions with the Gillins agency. I don't see any major problems. Good skiing! Shelly.

On April 1, 1992, Birenbaum personally entered into a consulting agreement with Option Care. Under the agreement, Birenbaum was to be paid $30,000 over the course of three months for creating and establishing an ambulatory infusion clinic on the campus of RH Dedman Hospital. On April 2, Metroplex, through Birenbaum, its president, entered into a pharmaceutical services agreement with Rockwall Drug, a franchisee of Option Care. Under this agreement, Metroplex would purchase pharmaceuticals, medical supplies and equipment, and pharmaceutical services from Rockwall. Both agreements contained a clause providing that the written document was the complete agreement between the parties; neither agreement made any reference to the proposed sale of Metroplex stock by Birenbaum.

On April 6, Ginsberg sent Asher a draft letter of intent stamped "Preliminary draft of *4-6-92* for discussion purposes only." The April 6 letter was unsigned; instead, the word "DRAFT" was stamped on the lines left for Ginsberg's and Asher's signatures. The April 6 draft contained the same terms for the option as the March 25 document, but also included several changes and additional terms. Among other things, the April 6 draft recited that "a material part of the consideration for Dr. Birenbaum entering the [pharmaceutical . services] Agreement, although not recited therein, is the implementation of the business arrangements described in this letter of intent." Ginsberg's cover letter accompanying the April 6 draft discussed several of the changes or additions, and concluded with the request: "Please review these documents at your earliest convenience so that we can proceed to *draft the necessary documents* for your review incorporating these business terms." (Emphasis added.)

On April 27, Ginsberg sent Asher another draft letter of intent, this one stamped "Preliminary draft of *4-27-92* for discussion purposes only." Ginsberg's cover letter accompanying the April 27 draft noted that he had further revised the enclosed letter of intent. Among other things, the cover letter states that: .

If all these changes are satisfactory, I will send you execution copies of the letter of intent.

With respect to the *drafting* of the put and call options, it would seem to me that your corporate attorneys who are more familiar with your capital structure and all the relevant considerations and approval processes necessary to enter these types of agreements, might make the first effort at .drafting them. Conceivably, you may have done it before for other transactions in which OCI has been involved. Let me know if they are going to undertake that effort.

(Emphasis added.)

The April 27 document was on the letterhead of Birenbaum's attorney, Ginsberg. It began as follows: "The purpose of this *letter of intent* is to record our understanding and agreement regarding the business arrangement to be entered into between Option Care, Inc. ("OCI"), [and] Dr. Dennis Birenbaum." (Emphasis added.) The April 27 draft contained further changes in the terms of the proposed transaction. For example, it altered the price of the stock by changing the defined price formula for the option. It also provided that Option Care would enter into a consulting agreement with Birenbaum to create an ambulatory infusion clinic, and that Option Care would "arrange for Dr. Birenbaum ... to have an opportunity to purchase 20,000 shares of Option Care stock at the initial public offering...." The April 27 draft concluded "[i]f the contents of this letter of intent are acceptable to Option Care, Inc., please execute the enclosed counterpart and return it to the undersigned, at the address set forth above." It contained blanks for Ginsberg's signature and for Asher's signature on behalf of Option Care. Neither party executed the April 27 draft letter of intent document.

Negotiations for Option Care's purchase of Birenbaum's stock ceased for nearly a year following the April 27 document. When negotiations resumed in March 1993, Ginsberg informed Asher that the only correspondence

he could find concerning the sale of Metroplex stock was the April 27 document and indicated there was no evidence that it had been executed. Thereafter, negotiations continued and the terms of the proposed transaction continued to change. Finally, in June 1994, Option Care gave notice that it would not pursue further negotiations for the purchase of Metroplex.

Birenbaum sued Option Care alleging breach of contract, promissory estoppel,[5] and negligent misrepresentation. Option Care moved for summary judgment on the ground that the statute of frauds bars Birenbaum's causes of action. The trial court granted summary judgment in favor of Option Care, and Birenbaum appealed.

### OPTION CARE'S STATUTE OF FRAUDS AFFIRMATIVE DEFENSE

At the time of the discussions between Birenbaum and Option Care, a contract for the sale of securities was not enforceable unless

> there is some writing signed by the party against whom enforcement is sought ... sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price.[6]

*Sufficient Writing*

In his first point of error, Birenbaum argues the summary judgment evidence showed, as a matter of law, that an agreement to purchase the stock was evidenced by a writing sufficient to comply with the statute of frauds. Birenbaum urges the March 25 fax complies with the statute of frauds, as a matter of law, because it references a stated quantity of stock, a stated price, and is signed by Asher. In his second point of error, Birenbaum insists there is at least a fact issue regarding the existence of a sufficient writing.

*Burden of Proof*

■ To prevail on its motion for summary judgment, a defendant must either disprove at least one element of the plaintiff's theory of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action.[7]

*Analysis*

■ We agree that the document sent by fax on March 25 contained a stated quantity and price; however, it was not signed. The Texas Business and Commerce Code defines "signed" as including "any symbol executed or adopted by a party with present intention to authenticate a writing."[8] The comment to section 1.201(39) elaborates:

> The inclusion of authentication in the definition of "signed" is to make clear that as the term is used in this Act a complete signature is not necessary. Authentication may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible authentications can be complete and the

---

5. Although promissory estoppel is normally a defensive theory (*see* discussion *infra* under heading BIRENBAUM'S PROMISSORY ESTOPPEL AFFIRMATIVE DEFENSE), it may be asserted by a plaintiff as an affirmative ground for relief. *See Adams v. Petrade Int'l, Inc.,* 754 S.W.2d 696, 707 (Tex.App.—Houston [1st Dist.] 1988, writ denied).

6. *See* Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2512 (former TEX. BUS. & COM.CODE ANN. § 8.319), *repealed* by Act of June 16, 1995, 74th Leg., R.S., ch. 962, § 1, 1995 Tex. Gen. Laws 4760, 4767.

    After the summary judgment in this case was rendered, the Texas Legislature revised Chapter 8 of the Texas Business and Commerce Code. Section 8.319 was deleted and a new provision rendering the statute of frauds inapplicable was enacted providing:

> A contract or modification of a contract for the sale or purchase of a security is enforceable whether or not there is a writing signed or record authenticated by a party against whom enforcement is sought, even if the contract or modification is not capable of performance within one year of its making.

TEX. BUS. & COM.CODE ANN. § 8.113 (Vernon Supp.1997).

7. *See International Union UAW Local 119 v. Johnson Controls, Inc.,* 813 S.W.2d 558, 563 (Tex.App.—Dallas 1991, writ denied).

8. TEX. BUS. & COM.CODE ANN. § 1.201(39) (Vernon 1994).

court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing.[9]

Asher signed the post-it note Fax Transmittal Memo, which was affixed to the March 25 document. However, this signature is not evidence from which the trial court could infer that Asher intended to authenticate the document to which it was *attached* as the agreement of the parties. At best, Asher's signature authenticates the transmittal memo that he affixed to the fax document.

In his motion for rehearing, Birenbaum claims that the statute of frauds does not require language exhibiting a "present intention to be bound." He states: "To require that the signature 'authenticate a present intention to be bound' is simply inconsistent with the undisputed absence of a necessity for the writing to contain verbs of commitment." As the "most poignant example" in support of his position, he cites the comment to section 1.201(39) and concludes that the statute of frauds can be satisfied by a writing containing only "a stated quantity, price, and a thumbprint." Birenbaum also argues that "Section 1.201(39)'s acknowledgement that a letterhead or billhead is sufficient to authenticate the writing as signed is rendered meaningless by [the Court's] decision that an uncontroverted signature of [Asher] fails to evidence an intent to be bound."

Birenbaum's arguments focus too much on section 1.201(39) at the expense of the statute of frauds. The writing that the statute of frauds requires to be signed (as that word is broadly defined by section 1.201(39)) is not just a piece of paper, but a *"writing ... sufficient to indicate that a contract has been made ...."*[10] To use Birenbaum's poignant example, a thumbprint would authenticate the writing as coming from its author. However, it still fails the statute of frauds be-

cause it is not "sufficient to indicate that a contract has been made."[11]

The summary judgment evidence reflects no factual disputes on the documents in question. Both parties agree that, among the documents regarding the negotiations for the sale of Metroplex stock, Asher's signature (on behalf of Option Care) appears only on the post-it note form affixed to the March 25 fax document—not the fax document itself. Further, neither the March 25 fax document nor the transmittal memo affixed to it is sufficient to indicate that a contract existed between the parties. No other evidence of a writing signed by Option Care was before the Court. Thus, Option Care proved its statute of frauds affirmative defense as a matter of law. We overrule Birenbaum's first point of error.

Birenbaum's second point of error asserts that the summary judgment evidence at least raises a fact question regarding the existence of a writing sufficient to comply with the statute of frauds. However, the facts are undisputed. Asher signed the Fax Transmittal Memo, not the document to which it was attached. Birenbaum contends that Asher's signature authenticates the document to which it was affixed as the agreement of the parties, and Option Care argues that it does not. Thus, the only dispute is one of legal interpretation—is the signature on the March 25 Fax Transmittal Memo evidence of Option Care's intent to authenticate the attached document as the agreement of the parties? We have already determined that as a matter of law it is not. Accordingly, we overrule Birenbaum's second point of error.

## BIRENBAUM'S PROMISSORY ESTOPPEL AFFIRMATIVE DEFENSE

In his summary judgment response, Birenbaum raised promissory estoppel as a defense to the statute of frauds. Birenbaum supported this assertion by his affidavit, stating that Asher promised to sign the April 27

---

**9.** *Id.* § 1.201 cmt. 39.

**10.** *See* Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2512 (repealed 1995) (emphasis added).

**11.** *Id.*

document on behalf of Option Care. Option Care did not controvert this assertion. Instead, Option Care urged that the parties never had a final agreement on all material terms. In his third point of error, Birenbaum argues the trial court erred in granting summary judgment because there are material issues of fact regarding his promissory estoppel defense to the statute of frauds.

### Exceptions to the Statute of Frauds

■ Before using equity to circumvent the statute of frauds, the Texas Supreme Court has consistently required a showing that fraud would result in not doing so. In *Hooks v. Bridgewater*,[12] the Texas Supreme Court considered the policy question of when equity should permit the courts to circumvent the statute of frauds. The Court first recognized the need for a positive, definite standard for deciding the question, stating that equity can circumvent the legislature's statutory directive only through "some positive rule which will insure its exercise for ... the prevention of an actual fraud as distinguished from a mere wrong ... so as to leave the statute itself, through the exactness of the exception, with some definiteness of operation."[13] The Court went on to enunciate a positive, definite rule:

> [T]o warrant equity's "breaking through the statute" to enforce ... a parol contract the case must be such that the nonenforcement of the contract-or *the enforcement of the statute-would, itself, plainly amount to a fraud.* This is the basis, and *the only basis,* for the jurisdiction which courts of equity have assumed in their creation of exceptions to the statute.[14]

In light of this rule, the *Hooks* Court then examined the long-standing, three-pronged test for relieving a parol sale of land from the operation of the statute of frauds.

> [W]here there is payment of the consideration, the surrender of possession and the making of valuable and permanent improvements on the faith of the purchase with the owner's knowledge or consent, *there is created an estoppel against him and it may fairly be said that a fraud upon the purchaser would result* if the owner were permitted to repudiate the contract.[15]

Thus, the requirements for exempting a parol sale of land from the operation of the statute of frauds satisfy the jurisdictional rationale for "breaking through" the statute and creating an equitable exception to its application—specifically, that the failure to do so would, itself, amount to a fraud.

In 1972, the Texas Supreme Court addressed whether other circumstances justified an equitable exception to the statute of frauds. In *"Moore" Burger, Inc. v. Phillips Petroleum Co.,*[16] the Court held that promissory estoppel, as defined by *Wheeler v. White*[17] and the Restatement of Contracts, also justified an equitable exception to the statute of frauds. The Court quoted the Restatement for the following proposition:

> 'Though there has been no satisfaction of the Statute [of Frauds], an estoppel may preclude objection on that ground in the same way that objection to the non-existence of other facts essential for the establishment of a right or a defence may be precluded. A misrepresentation that there has been such satisfaction if substantial action is taken in reliance on the representation, precludes proof by the party who made the representation that it was false; and a promise to make a memorandum, if similarly relied on, may give rise to an effective promissory estoppel *if the Statute would otherwise operate to defraud.'*[18]

12. 111 Tex. 122, 127, 229 S.W. 1114, 1116 (1921).

13. *Nagle v. Nagle,* 633 S.W.2d 796, 799 (Tex. 1982) (quoting *Hooks,* 111 Tex. at 128, 229 S.W. at 1116).

14. *Hooks,* 111 Tex. at 128, 229 S.W. at 1116 (emphasis added).

15. *Id.* at 128, 229 S.W. at 1117 (emphasis added).

16. 492 S.W.2d 934, 938 (Tex.1972).

17. 398 S.W.2d 93, 96 (Tex.1965).

18. *"Moore" Burger,* 492 S.W.2d at 937 (quoting Restatement of Contracts § 178 cmt. f (1932)) (emphasis added).

*"Moore" Burger* also makes clear that promissory estoppel will only avoid the statute of frauds if the promise made was to execute a document in existence that *itself* complied with the statute.[19] The party asserting promissory estoppel must show that the writing that is the subject of the promise demonstrates the parties have come to a final agreement as to all material terms.[20]

Ten years later, in *Nagle v. Nagle*, the Texas Supreme Court again confirmed that promissory estoppel circumvents the statute of frauds in the limited circumstance when it was necessary to prevent " 'an actual fraud as distinguished from a mere wrong.' " [21] *Nagle* also reiterated that the promise giving rise to an estoppel must be a promise to sign a document that meets the requirements of the statute of frauds.[22]

Although *"Moore" Burger* and *Nagle* dealt with an exception differing from the one analyzed in *Hooks*, the reason for the exceptions is the same—courts will avoid the statute of frauds only when the facts create an estoppel against the person seeking to enforce the statute such that it may fairly be said that a fraud will result if the statute were enforced.

### Burden of Proof

■ Promissory estoppel is primarily a defensive plea; it is a plea in confession and avoidance.[23] When, as here, summary judgment proof establishes a statute of frauds defense as a matter of law, the party asserting promissory estoppel to avoid summary judgment must raise a fact issue concerning its applicability.[24] Thus, to avoid summary judgment Birenbaum had to establish a fact issue as to *each* element of promissory estoppel.[25] Specifically, he had to present evidence that: (1) Option Care promised to sign an agreement that complied with the statute of frauds; (2) Option Care reasonably should have expected its promise would induce Birenbaum to take action or forbear from taking action; (3) Option Care's promise to sign the agreement induced action or forbearance in reliance on the promise; (4) the action taken or forbearance made was of a definite and substantial character; and (5) injustice to Birenbaum can be avoided only by enforcing the promise.[26] If Birenbaum failed to raise a fact issue on any one of these elements, the trial court properly rendered summary judgment in favor of Option Care.

### Summary Judgment Record

■ In his affidavit Birenbaum swore that Mr. Asher, on behalf of Option Care, specifically agreed to sign the writing provided by Mr. Ginsberg. I relied on Option Care's promise to execute a written contract to the extent that I performed under the agreement and would not have done so if Mr. Asher and Option Care refused to sign the agreement. Moreover, had Option Care not promised to execute the agreement, I would have accepted an offer provided by Option Care's competitors for the purchase of Metroplex stock.

Birenbaum's brief and counsel represent the April 27 draft letter of intent as the document Option Care promised to execute. Bir-

**19.** *See id.* at 940; *see also Coastal Corp. v. Atlantic Richfield Co.*, 852 S.W.2d 714, 718 (Tex. App.—Corpus Christi 1993, no writ).

**20.** *Coastal Corp.*, 852 S.W.2d at 718; *see H. Molsen & Co. v. Hicks*, 550 S.W.2d 354, 356 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.).

**21.** *Nagle*, 633 S.W.2d at 799 (quoting *Hooks*, 229 S.W. at 1116).

**22.** *Id.* at 800.

**23.** *"Moore" Burger*, 492 S.W.2d at 936.

**24.** *Id.* at 936–37.

**25.** *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984) (affirmative defenses generally); *Jones v. Texas Pac. Indem. Co.*, 853 S.W.2d 791, 795 (Tex.App.—Dallas 1993, no writ) (promissory estoppel).

**26.** *See "Moore" Burger*, 492 S.W.2d at 938; *Harkinson v. Trammell Crow Co.*, 915 S.W.2d 28, 36 (Tex.App.—Dallas 1995), *aff'd in part, rev'd in part on other grounds*, 944 S.W.2d 631 (Tex. 1997); *see also Mann v. NCNB Tex. Nat'l Bank*, 854 S.W.2d 664, 668 (Tex.App.—Dallas 1992, no writ) (stating the party invoking the doctrine must show that the party raising the statute of frauds defense orally promised to sign a particular written document which had been prepared and which would satisfy the requirements of the statute of frauds); *Beta Drilling, Inc. v. Durkee*, 821 S.W.2d 739, 741 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (same).

enbaum's affidavit also states that, because of Option Care's representations, he began to perform under the terms of the agreement; specifically, he executed the consulting agreement personally and the pharmaceutical services agreement on behalf of Metroplex. However, these documents were executed on April 1 and 2, respectively, well before the April 27 document existed. Thus, Birenbaum could not have relied on an oral promise to sign an existing April 27 document when he signed the April 1 and 2 agreements. Further, by their own terms, the April 1 and 2 agreements are not linked to any sale of Metroplex stock. Therefore, Birenbaum's affidavit presented no summary judgment evidence that Option Care's promise to sign the April 27 draft letter of intent induced any action or forbearance by Birenbaum.

Ginsberg's affidavit also fails to present any evidence that Birenbaum acted in reliance on Option Care's promise. Ginsberg's affidavit states that: (1) Asher signed the March 25, 1995 document; (2) "[i]n reliance on Option Care's agreement [the March 25 document], Dr. Birenbaum foreclosed all negotiations with other companies" concerning the sale of the stock; and (3) Ginsberg *thereafter* prepared the April 27 draft letter of intent. In other words, Birenbaum terminated negotiations with others in reliance on the March 25 fax document (which we have already held is unenforceable), *not* the April 27 draft letter of intent that Birenbaum claims Option Care promised to sign. Because Birenbaum rejected other competing offers before the April 27 draft letter of intent existed, he could not have rejected the other offers in reliance on Option Care's promise to sign the April 27 document. Thus, Birenbaum failed to raise a fact issue on whether Option Care's promise to sign the April 27 document induced action or forbearance in reliance on the promise.

Additionally, the summary judgment evidence does not raise a fact issue on whether Option Care promised to sign a document that itself complied with the statute of frauds. The April 27 draft was not a final

agreement—even if Option Care had promised to sign it. It was, by its own terms, not a contract to the sale of stock. Rather, it was a *letter of intent* concerning a proposed transaction that covered a number of matters. It clearly envisioned other documents would be negotiated, agreed to, drafted, and executed. This conclusion is also supported by the other summary judgment evidence, including attorney Ginsberg's cover letter forwarding the April 27 draft, which discussed the drafting of some of these agreements.

Transactions involving the sale of a controlling interest in a corporation's stock are often complicated. Because the negotiations of such transactions contemplate a wide number of intricate considerations, reducing the proposed terms of any future agreement to writing is often necessary before the parties reach a mutual understanding and agreement on the total transaction. *Southmark Corp. v. Life Investors, Inc.*[27] is an example of such a transaction. In *Southmark*, the buyer sued the seller, alleging that the seller indicated an agreement had been reached and that the seller would execute documents consummating that agreement.[28] After reviewing the evidence and outlining a number of transactional elements relating to the proposed overall agreement, the Fifth Circuit noted that "at most the parties contemplated final documents that were to be prepared and approved sometime in the future." Under these circumstances, the court wrote:

> We cannot say that where such an agreement is involved justice requires the enforcement of an oral promise to reduce the agreement to writing or to execute final documents at a later time, especially where, as here, it does not appear that the parties had even worked out the final details of the alleged transaction. To hold otherwise would render the statute of frauds useless in cases where the parties acknowledge the fact that an agreement to consummate such a massive and complicated transaction must eventually be reduced

**27.** 851 F.2d 763 (5th Cir.1988) (applying Texas law in a diversity case).

**28.** *Id.* at 768.

to writing, the wording of which is yet to be agreed on.[29]

Like the transaction in *Southmark*, the proposed transaction here involved a number of matters, including a put option for the sale of Metroplex stock based on a complex price formula; a consulting relationship regarding the creation of an ambulatory infusion clinic; and an opportunity for Birenbaum to purchase stock in Option Care at an initial public offering that might take place in the future. The parties in the present case utilized draft letters of intent in their negotiations and, like the parties in *Southmark*, had not worked out the final details of the transaction under negotiation. Therefore, we conclude that the summary judgment evidence does not raise an issue on whether Option Care promised to sign an agreement that, itself, would comply with the statute of frauds.

In summary, the summary judgment evidence does not raise a fact issue on: (a) whether Option Care's promise induced action or forbearance by Birenbaum of a definite and substantial nature; and (b) whether Option Care promised to sign an existing document that itself satisfied the statute of frauds. Thus, Birenbaum failed to raise a fact issue on whether applying the statute of frauds would itself result in a fraud to him. Therefore, we need not address whether the evidence raised an issue of fact on each of the remaining elements of Birenbaum's promissory estoppel defense.[30] We overrule Birenbaum's third point of error.

## PARTIAL PERFORMANCE

■ In his fourth point of error, Birenbaum asserts that a material fact issue exists on whether his partial performance under the agreement prevents the application of the statute of frauds. Specifically, Birenbaum contended in his summary judgment re-

sponse that his performance under the separate consulting agreement was partial performance of the agreement to sell Metroplex stock. We disagree.

Former Texas Business and Commerce Code section 8.319(2) recognizes the doctrine of partial performance when delivery of the security or transfer instruction has been accepted, transfer of the security has been registered without a timely objection, or payment has been made.[31] Thus, to invoke the partial performance exception of section 8.319(2), Birenbaum would have "to perform an act directly related to the stock." [32]

*Beta Drilling v. Durkee* recognized that an allegation of employment services performed is, by itself, insufficient to circumvent the statute of frauds for the sale of securities.[33] There the plaintiff, Durkee, alleged an oral agreement existed requiring him to organize a company, act as its CEO and president, and pay $25,000 out of his personal funds.[34] In return, Durkee would be paid an $80,000 salary and given twenty-five percent of the company's stock.[35] The court held that evidence of Durkee's performance of the employment portion of the alleged agreement, without evidence that he paid for the stock, that he accepted delivery of the stock or transfer instruction, or that the stock was registered without objection, was insufficient to circumvent the statute of frauds.[36]

Like the plaintiff in *Beta Drilling*, Birenbaum asserts that performance of the consulting agreement is sufficient to recognize an agreement for the sale of Metroplex stock. However, Birenbaum does not assert any of the methods of partial performance listed in section 8.319(2). Birenbaum's performance under the consulting agreement does not relate directly to the securities in question and is thus insufficient to circumvent the statute

**29.** *Id.* at 769.

**30.** *See* Tex.R.App. P. 90(a).

**31.** *See* Act of May 25, 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2512 (repealed 1995); *Beta Drilling*, 821 S.W.2d at 741; *Consolidated Petroleum Indus. v. Jacobs*, 648 S.W.2d 363, 366 (Tex.App.—Eastland 1983, writ ref'd n.r.e.).

**32.** *Beta Drilling*, 821 S.W.2d at 741.

**33.** *Id.*

**34.** *Id.* at 740.

**35.** *Id.*

**36.** *Id.* at 741.

of frauds. Accordingly, we overrule point of error four.

## CONCLUSION

Having overruled all of Birenbaum's points of error, we affirm the judgment of the district court.