[No. 42557-9-I.    Division One.    July 6, 1999.]

MAJOR PRODUCTS CO., INC., *Appellant*, v. NORTHWEST HARVEST PRODUCTS, INC., ET AL., *Respondents*.

*Stephen Alexander Bernheim*, for appellant.

*Donald H. Eoll*, pro se.

*Helen A. Anderson*; and *Patricia Fulton* and *Daniel Jablonsky, Legal Interns*, for respondents.

BAKER, J. — Northwest Harvest Products, Inc. fell behind on its trade account with Major Products Company, Inc., and they negotiated terms for payment of Northwest's debt. Major requested a note for the debt, and Northwest sent a $79,000 corporate note. The balance on the note was incorrect, and Northwest sent a second corporate note for $79,361.89. After further discussion between the parties, Major sent a $78,445.24 note. The Chief Executive Officer of Northwest at that time signed the note "Donald H Eoll CEO," attached a Post-It™ brand fax transmittal memo indicating that the note came from Donald Eoll at Northwest, and sent the note via facsimile. The note went unpaid, and Major sued both Eoll and Northwest for the debt. Only the facsimile copy of the note was presented at trial, and the court below found that the writing on the Post-It™, coupled with the signature, identified Northwest as the principal on the note. The trial court thus held that Eoll was not personally liable for the debt because he signed the note as an agent for Northwest.

Major appeals, contending that the Post-It™ brand fax transmittal memo served as a mere convenience for Eoll's transmission of the note and thus Eoll's signature did not identify Northwest as the principal on the note. We agree with Major that the writing on a Post-It™ brand fax transmittal memo is independent of an underlying document. Thus Eoll's signature did not identify Northwest as the principal on the note and it is not apparent from the body of the note that he signed as an agent for Northwest. Eoll bore the burden of rebutting a presumption of personal liability. Because Eoll did not provide evidence or testimony

that rebutted that presumption, he is personally liable on the note.

## I

Major has moved this court to strike Eoll's brief in its entirety because it was submitted by law students in the University of Washington Appellate Advocacy Clinic. After an examination of the record and briefing in the instant case, this court determined that our review on appeal would benefit from the appointment of the Appellate Advocacy Clinic as pro bono counsel. Major's motion contends that such counsel is not statutorily authorized and is a gift of state funds to a private individual in violation of article 8, section 5 of this state's constitution.

Major's motion is untimely. Major had at least two opportunities to object: 1) when the court ordered the appointment of pro bono counsel; and 2) when the Director of the Appellate Advocacy Clinic at the University of Washington was appointed pro bono counsel. Major did not object, request further consideration of this matter, or move this court to strike the appearance of pro bono counsel until after counsel had filed respondent's brief. Absent an objection or a request for further consideration of this matter by this court, Major should have filed a petition for review within 30 days of at least one of the above events. Because Major did not, its request is untimely, especially so in light of the fact that the respondent's briefs have been prepared and filed in this case.

■ Although Major's objection is untimely, we may nonetheless consider the merits of Major's arguments in support of its objection. Such consideration is warranted where an arguably moot issue involves matters of continuing and substantial public interest.[1] In determining whether such matters are involved, the court considers the public or private nature of the question, the need for future guid-

---

[1] *Weden v. San Juan County*, 135 Wn.2d 678, 685, 958 P.2d 273 (1998).

ance provided by an appellate court's decision, and the likelihood of recurrence.[2] Because the appointment of pro bono counsel is an issue which will likely recur under similar circumstances and because an appellate decision would provide future guidance with respect to challenges such as Major's, we have determined that consideration of the merits of Major's argument is appropriate.

■ Major contends that sua sponte appointment of pro bono counsel in a civil case is not statutorily authorized. But RCW 2.04.180 and RCW 2.04.190 empower the Supreme Court to promulgate rules in order to secure the fair and proper administration of justice, and RAP 7.3 vests this court with the authority "to perform all acts necessary or appropriate to secure the fair and orderly review of a case." The pro bono appellate program assists this court in resolving pro se appeals more equitably and efficiently. This court determined that the appointment of pro bono counsel would benefit the court's review here. The appointment falls within the scope of RAP 7.3 as an appropriate action to secure the fair and orderly review of this case. We find no merit in Major's contention that this court is not statutorily authorized to appoint the Appellate Advocacy Clinic at the University of Washington as pro bono counsel.

■ Major also contends that the appointment of pro bono counsel violates article 8, section 5 of the state constitution, which provides that:

> The credit of the state shall not, in any manner be given or loaned to, or in aid of, any individual, association, company or corporation.[3]

In determining whether a gift or loan of public funds has occurred, the first inquiry made is to analyze whether the funds have been expended to carry out a fundamental

---

[2]*In re Truancy of Perkins*, 93 Wn. App. 590, 593, 969 P.2d 1101 (1999).

[3]CONST. art. VIII, § 5.

purpose of government.[4] Where public funds are used for a recognized governmental function, no unconstitutional gift occurs.[5]

Recognized governmental functions are excepted because applying the constitutional debt limitations of article 8, section 5 would destroy the efficiency of the agencies established by the constitution to carry out the recognized and essential powers of government.[6] Such functions include industrial insurance, higher education, collection of child support payments, and support to the poor or infirm.[7]

We note that Major has failed to explain how the State's credit is being lent here. The students who prepared Eoll's brief have not been paid. We also note that Major has chosen not to reply to Eoll's argument that these students are engaged in a valid educational pursuit by serving as pro bono counsel or Eoll's argument that article 8, section 5 is not violated when private individuals incidentally benefit from the provision of recognized governmental functions.[8] In any event, the provisions of article 8, section 5 are not implicated here because the pro bono project is a valid part of a higher education program. We deny Major's motion as both untimely and without merit.

Major also moved this court to strike Eoll's bare assertion on appeal that the facsimile copy is "the only promissory note in existence" because that assertion constitutes a misrepresentation that is not supported by the record. In

[4]*Brower v. State*, 137 Wn.2d 44, 62, 969 P.2d 42 (1998), *cert. denied*, 526 U.S. 1088 (1999).

[5]*Citizens for Clean Air v. City of Spokane*, 114 Wn.2d 20, 39, 785 P.2d 447 (1990) (interpreting article 8, section 7, and noting said provision is interpreted in an identical manner as article 8, section 5).

[6]*In re Marriage of Johnson*, 96 Wn.2d 255, 262, 634 P.2d 877 (1981) ("It cannot be conceived that the people who framed and adopted the constitution had such consequences in view.").

[7]*Department of Labor & Indus. v. Wendt*, 47 Wn. App. 427, 435, 735 P.2d 1334 (1987) (collecting cases).

[8]*See Johnson*, 96 Wn.2d 255 (article 8, section 5 not violated by state program that collects past due child support payments).

support of its motion, Major has attached a copy of a document that it alleges is the original note and Eoll has moved to strike that document as a belated attempt to introduce evidence. We agree that Eoll's assertion is not supported by the record and have taken that fact into consideration in disposing of this case. We also agree with Eoll that Major's document is an attempt to introduce evidence that is not in the record and accordingly disregard that document.

## II

■ Interpretation of the terms of an agreement is a question of law and is reviewed de novo on appeal.[9] Construction of the contractual language here is governed by the law in existence at the time these parties entered into their agreement.[10] The relevant law includes the 1992 version of RCW 62A.3-402, which states:

**Signature in ambiguous capacity.** Unless the instrument clearly indicates that a signature is made in some other capacity it is an indorsement.

The 1992 version of RCW 62A.3-403 also controls here, and that section reads:

**Signature by authorized representative.** (1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

(2) An authorized representative who signs his own name to an instrument

(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

---

[9]*Knipschield v. C-J Recreation, Inc.*, 74 Wn. App. 212, 215, 872 P.2d 1102, *review denied*, 124 Wn.2d 1027 (1994).

[10]*Reynolds v. Insurance Co. of N. Am.*, 23 Wn. App. 286, 290-91, 592 P.2d 1121, *review denied*, 92 Wn.2d 1020 (1979) (parties must indicate a contrary intent to the default rule that the governing law is the law in effect at the time of agreement).

(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.

■ Major contends that the Post-It™ brand memo was merely a convenience for Eoll to facilitate the transmission of the agreement from one facsimile machine to another and did not form an integral part of the parties' agreement. The legal effect of such a memo presents an issue of first impression in this state. In *Birenbaum v. Option Care, Inc.*,[11] a Post-It™ brand fax transmittal memo with writing and a signature was attached to a document prior to its transmission. The court found that a signature on a Post-It™ brand memo is not evidence from which the trial court could infer an intent to sign the underlying document.[12] Instead, the information and signature on the Post-It™ brand memo were independent of the underlying document and were not operative on that document in the same manner as a signature on the underlying document would have been.[13]

■ We think that *Birenbaum* sets forth a sound approach for dealing with Post-It™ brand fax transmittal memos and the like. We hold that such writings are independent of an underlying document and do not have the same legal effect as writing on the face of a document. Although extrinsic evidence may sometimes show that such writings form an integral part of an agreement, our holding furthers contract law's objective of protecting the justi-

[11] 971 S.W.2d 497 (Tex. Ct. App. 1997).

[12] *Id.* at 502.

[13] *Id.*

fied expectations of parties by promoting certainty in business dealings.[14] The transmission of documents via facsimile is a technological advance that should reinforce the justified expectations of parties by improving transactional communications, and we reject Eoll's arguments that attempt to introduce legal uncertainty into business dealings that are assisted by such advances. If a party wishes to include information or make a modification on the face of a document transmitted via facsimile, such information or modification should be made in writing on the document directly, not by means of a writing that is easily detached or separated from the original.

Because the Post-It™ brand fax transmittal memo here is independent of the note, the signature on the parties' agreement reads only "Donald H Eoll CEO." Thus for purposes of former RCW 62A.3-403(2)(b), the note does not name the person represented (Northwest), but does show that Eoll signed in a representative capacity. That signature might indicate that the parties intended Eoll would be personally bound by the note or that Eoll would not be personally bound by the note, and thus further inquiry into the parties' intent is warranted.

■ Major contends that Eoll bore the burden of establishing that he did not intend to be personally bound when he signed the note and has failed to carry that burden. Major cites to the present version of RCW 62A.3-402(b)(2) in support of this contention. But that statute was not in effect until July 1, 1994, almost two years after execution of the note, and is not controlling here.

Under former RCW 62A.3-402, Eoll's signature is an

---

[14]*See O'Brien v. Shearson Hayden Stone, Inc.*, 93 Wn.2d 51, 54, 605 P.2d 779 (1980) (Horowitz, J., concurring in part and dissenting in part) (citing H. BERMAN AND W. GREINER, THE NATURE AND FUNCTIONS OF LAW, 608-614 (3d ed. 1972) under the heading "Why Should the Law Ever Protect the Expectation Interest?" for a description of the theoretical justification for protecting the justified expectations of the parties to a contract); *see also* Tracy A. Powell, Note, *Stock in a Closely Held Corporation: Is it a Security for Uniform Commercial Code Purposes?*, 42 VAND. L. REV. 579, 605 (1989) (citing U.C.C. § 1-102 for the proposition that it is a policy of the U.C.C. to promote certainty in transactions and encourage sound business practices).

endorsement unless the note clearly indicates that his signature was made in some other capacity. Construction of this superceded legislation is an issue of first impression in Washington. The comments to this former section state:

> [A]ny ambiguity as to the capacity in which a signature is made must be resolved by a rule of law that it is an indorsement. Parol evidence is not admissible to show any other capacity, except for the purpose of reformation of the instrument as it may be permitted under the rules of the particular jurisdiction. The question is to be determined from the face of the instrument alone, and unless the instrument itself makes it clear that he has signed in some other capacity the signer must be treated as an indorser.

> The indication that the signature is made in another capacity must be clear without reference to anything but the instrument. It may be found in the language used. Thus if John Doe signs after "I, John Doe, promise to pay," he is clearly a maker; and "John Doe, witness" is not liable at all. The capacity may be found in any clearly evidenced purpose of the signature, as where a drawee signing in an unusual place on the paper has no visible reason to sign at all unless he is an acceptor. It may be found in usage or custom. Thus by long established practice judicially noticed or otherwise established a signature in the lower right hand corner of an instrument indicates an intent to sign as the maker of a note or the drawer of a draft. Any similar clear indication of an intent to sign in some other capacity may be enough to remove the signature from the application of this section.

Our interpretation of the above comment is that former RCW 62A.3-402 creates a presumption of personal liability for a person's signature on a note and that the signer bears the burden of rebutting that presumption.

Extrinsic evidence is admissible as to the entire circumstances under which a contract was made, as an aid in ascertaining the parties' intent.[15] Although extrinsic evidence was admissible as an aid to show these parties'

---

[15]*Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990).

intent, Eoll represented himself at trial and did not testify as to the parties' intent. Instead, Eoll relied upon the course of correspondence between Northwest and Major to establish that he did not intend to be personally bound. But the course of correspondence is inconclusive at best because it does not discuss Eoll's personal liability in any way. Because the correspondence between these parties is inconclusive and Eoll did not testify as to these parties' intent, Eoll failed to present extrinsic evidence which would rebut a presumption of personal liability. Eoll is personally liable on this note.

Reversed.

KENNEDY, C.J., and ELLINGTON, J., concur.

Review denied at 139 Wn.2d 1007 (1999).